# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 18

OCTOBER TERM, A.D. 2012

February 8, 2013

WYATT L. BEAR CLOUD,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

No. S-11-0102

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*

Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Ms. Olson.

*Representing Appellee:*

Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Jeffrey S. Pope, Assistant Attorney General. Argument by Mr. Pope.

*Before KITE, C.J., HILL, BURKE, J.J., GOLDEN, J., Retired, and DONNELL, D.J.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**DONNELL, District Judge.**

[¶1]     This is the second time we have considered Appellant Wyatt Bear Cloud's appeal from his conviction for murder in the first degree (felony murder), in violation of Wyo. Stat. Ann. § 6-2-101(a) (LexisNexis 2009).[1]   In the first appeal, this Court held that Mr. Bear Cloud's sentence of life imprisonment for first-degree murder, mandated by Wyoming Statute § 6-2-101(b), was constitutional under the Eighth Amendment to the United States Constitution.  *Bear Cloud v. State*, 2012 WY 16, 275 P.3d 377 (Wyo. 2012), *reh'g denied* (Mar. 6, 2012) (hereinafter "*Bear Cloud I*").  Mr. Bear Cloud sought review of that ruling in the United States Supreme Court, which summarily vacated the judgment in *Bear Cloud I* and remanded the case to us for further consideration in light of *Miller v. Alabama*, 567 U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), which case was entered after our decision in *Bear Cloud I*.  *Bear Cloud v. Wyoming*, ___ U.S. ___, 133 S.Ct. 183, 183-84, 184 L.Ed.2d 5 (2012) (mem.).

[¶2]     On remand, we hold in light of the *Miller* decision that Mr. Bear Cloud's sentence for his first-degree murder conviction violates the Eighth Amendment and related United States Supreme Court case law.  Consequently, we will remand the matter to the district court with instructions to resentence Mr. Bear Cloud on the first-degree murder conviction so as to conform to Eighth Amendment jurisprudence and this opinion.

## STATEMENT OF THE ISSUE ON REMAND

[¶3]     The Court largely adopts the State's phrasing of the single issue on remand:  The United States Supreme Court recently held that mandatory sentences of life without parole for juveniles violate the Eighth Amendment to the United States Constitution.  Mr. Bear Cloud pled guilty to first-degree murder and received a sentence of "life according to law" under Wyoming Statute § 6-2-101(b), but other state statutes make him ineligible for parole.  Does the phrase "life according to law" conform to recent United States Supreme Court case law, or is Wyoming Statute § 6-2-101(b) unconstitutional as applied to juveniles?

## FACTS OF THE MURDER

[¶4]     In the early morning hours of August 26, 2009, Mr. Bear Cloud, along with co-defendants Dennis Poitra, Jr. and Dharminder Vir Sen, entered the home of Robert and Linda Ernst in Sheridan, Wyoming, with the intent to steal items from the home.  While

---

[1] Appellant was also convicted of conspiracy to commit aggravated burglary, in violation of Wyo. Stat. Ann. §§ 6-1-303(a) and 6-3-301(a) and (c)(i) (LexisNexis 2009) and aggravated burglary, in violation of Wyo. Stat. Ann. § 6-3-301(a) and (c)(i) (LexisNexis 2009). Those convictions are not before the Court in this matter.

1

committing this burglary, Mr. Sen shot and killed Mr. Ernst. Mr. Bear Cloud was sixteen years old at the time; Mr. Sen, fifteen; and Mr. Poitra was eighteen.

[¶5] In the several days prior to the murder, during meetings at Mr. Bear Cloud's residence, the three planned to commit a series of armed burglaries. They obtained weapons (including a knife, a 9mm handgun, and a bat) and a map, planned the location of the burglaries, and obtained dark clothing and masks to conceal their identity. During this planning phase, Mr. Bear Cloud and Mr. Sen broke into a pickup truck and stole the handgun that Mr. Sen later used to kill Mr. Ernst.

[¶6] Early in the morning on August 26, 2009, the three broke into the Ernst home as the second of their targeted residences. At the time of their entry, Mr. Poitra had the handgun and the knife; Mr. Sen possessed the bat. As they proceeded to the basement to search for items to steal, they passed the master bedroom and observed Mr. and Mrs. Ernst asleep. After some searching, Mr. Sen obtained the handgun from Mr. Poitra, stating that he wanted to force Mr. Ernst to open a safe located in the basement.

[¶7] The three cohorts returned upstairs, and Mr. Poitra and Mr. Sen entered the master bedroom. Mr. Bear Cloud apparently was on the same floor, but not in the Ernsts' bedroom. After waking Mr. Ernst, Mr. Sen yelled something at Mr. Ernst and then shot him three times, killing him. The trio then fled back to Mr. Bear Cloud's residence.

## RELEVANT PROCEDURAL HISTORY

[¶8] On September 8, 2010, Mr. Bear Cloud entered "cold" guilty pleas to all three charges. On January 10, 2011, he filed a motion challenging the constitutionality of a life sentence for a juvenile convicted of first-degree murder. The district court held a sentencing hearing on February 9, 2011, where it denied the constitutional challenge.

[¶9] The district court sentenced Mr. Bear Cloud to 20–25 years in prison on the aggravated burglary conviction; life imprisonment according to law on the first-degree murder conviction, to be served consecutively to the sentence for aggravated burglary; and 20–25 years in prison on the conspiracy to commit aggravated burglary conviction, to be served concurrently with the first-degree murder sentence but consecutively to the aggravated burglary sentence. Only the life sentence for first-degree murder is at issue in this appeal.

[¶10] In his first appeal, Mr. Bear Cloud raised seven issues. Of pertinence here, Mr. Bear Cloud argued that his mandatory sentence of life imprisonment for first-degree murder was cruel and unusual and, therefore, in violation of the Eighth Amendment. We held that the sentence did not violate the Eighth Amendment, and we affirmed Mr. Bear Cloud's convictions and sentence. *Bear Cloud I*, ¶¶ 81-88, 275 P.3d at 411-13. We stated, "Wyo. Stat. Ann. § 6-2-101(b) is not rendered unconstitutional by its mandatory

2

sentencing structure, even as applied to a juvenile offender, and particularly in light of the district court's ability to consider mitigating circumstances when considering whether to transfer proceedings to juvenile court." *Id.*, ¶ 87, 275 P.3d at 413.

[¶11]  After that decision, the United States Supreme Court issued *Miller*, 567 U.S. ___, 132 S.Ct. 2455, where it held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id., 567 U.S.* at ___, 132 S.Ct. at 2469.  The Court reasoned, "By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.*

[¶12]  Based on *Miller*, Mr. Bear Cloud petitioned the United States Supreme Court to overturn this Court's prior decision.  By summary disposition, the United States Supreme Court granted the petition for writ of certiorari, vacated the judgment in *Bear Cloud I*, and remanded the case for further consideration in light of *Miller*.  *Bear Cloud v. State*, ___ U.S. at ___, 133 S.Ct. at 183-84.

## STANDARD OF REVIEW

[¶13]  This Court considers a challenge to the constitutionality of a statute *de novo*. Issues of constitutionality present questions of law.  We review questions of law under a *de novo* standard of review and afford no deference to the district court's determinations on the issues.  *Anderson v. Bommer*, 926 P.2d 959, 961 (Wyo. 1996).

[¶14]  This appeal also requires the Court to interpret and apply the statutes governing sentencing for first-degree murder and parole eligibility.  Statutory interpretation is a question of law, which we consider *de novo*.  *Spreeman v. State*, 2012 WY 88, ¶ 6, 278 P.3d 1159, 1161 (Wyo. 2012).

## DISCUSSION

[¶15]  When considering whether a statute is constitutional, we will presume it so and resolve any doubt in favor of its constitutionality.  *Reiter v. State*, 2001 WY 116, ¶ 7, 36 P.3d 586, 589 (Wyo. 2001).  "[Appellant] bears the burden of proving the statute is unconstitutional." *Id*.

[¶16]  While the *Miller* decision serves as the impetus for us to reconsider the constitutionality of Mr. Bear Cloud's sentencing, it is useful to begin by reviewing the pertinent United States Supreme Court cases that guide our decision today.

## I.    Relevant Eighth Amendment Jurisprudence

[¶17]  We begin by setting forth the basic structure underlying Eighth Amendment

considerations before reviewing related United States Supreme Court case law.

### A. Framework for Eighth Amendment Analysis

[¶18]  The Eighth Amendment  prohibits punishments that are inherently barbaric or disproportionate to the crime.

> The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion)).  "This is because '[t]he standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment.  The standard itself remains the same, but its applicability must change as the basic mores of society change.'" *Kennedy v. Louisiana,* 554 U.S. 407, 419, 128 S.Ct. 2641, 2649, 171 L.Ed.2d 525, 538 (2008) (quoting *Furman v. Georgia,* 408 U.S. 238, 382, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Burger, C.J., dissenting)).
>
> The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances. *See, e.g., Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).  "[P]unishments of torture," for example, "are forbidden." *Wilkerson v. Utah,* 99 U.S. 130, 136, 25 L.Ed. 345 (1879).  These cases underscore the essential principle that, under the Eighth Amendment, the State must respect the human attributes even of those who have committed serious crimes.
>
> For the most part, however, the Court's precedents consider punishments challenged not as inherently barbaric but as disproportionate to the crime.  The concept of proportionality is central to the Eighth Amendment.   Embodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

4

*Graham v. Florida*, 560 U.S. ___, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010).

**B.** **_Solem v. Helm_: The Possibility of Executive Clemency is Not Equivalent to the Possibility of Parole**

[¶19]  In *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.E.2d 637 (1983), a case involving a conviction for writing a bad check, the Court stated, "As a matter of law, parole and commutation are different concepts, despite some surface similarities." *Id.* 463 U.S. at 300, 103 S.Ct. at 3015.  There, South Dakota had a parole and commutation system very similar to Wyoming's current system.  Specifically, the South Dakota statute prevented any person sentenced to life imprisonment from being eligible for parole.  *Id.*, 463 U.S. at 282, 103 S.Ct. at 3005-06.  The South Dakota Governor was authorized to commute a life sentence to a term of years, and, upon such commutation, the person would then become eligible for parole.  *Id.*  Unless commutation occurred, however, a person serving a life sentence would never be eligible for parole.  *Id.*

[¶20]  The United States Supreme Court determined that such a system does not provide a meaningful opportunity for release.

> Parole is a regular part of the rehabilitative process. Assuming good behavior, it is the normal expectation in the vast majority of cases.  The law generally specifies when a prisoner will be eligible to be considered for parole, and details the standards and procedures applicable at that time. Thus it is possible to predict, at least to some extent, when parole might be granted.  Commutation, on the other hand, is an *ad hoc* exercise of executive clemency.  A Governor may commute a sentence at any time for any reason without reference to any standards.

*Id.*, 463 U.S. at 300-01, 103 S.Ct. at 3015 (internal citations omitted).  Thus, in *Solem*, the Court concluded that the possibility of commutation by the governor "is nothing more than a hope for 'an *ad hoc* exercise of clemency,'" which does not equate to the possibility of parole.  *Id.*, 463 U.S. at 303, 103 S.Ct. at 3016.  Notably, *Solem* did not involve a juvenile offender, but its holdings laid the foundation for the cases involving juveniles that followed years later.

**C.** **_Roper v. Simmons_: Death Penalty is Unconstitutional for Juveniles**

[¶21]  Commencing in 2005, the United States Supreme Court issued a series of decisions pertaining to the Eighth Amendment's effect on juveniles.  In *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Court held that "[t]he

Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." *Id.*, 543 U.S. at 578, 125 S.Ct. at 1200.

[¶22] Importantly, the Court discussed differences between juveniles and adult offenders, including: (1) a juvenile's "lack of maturity and an underdeveloped sense of responsibility;" (2) a juvenile's increased susceptibility to "negative influences and outside pressures, including peer pressure;" and (3) the idea that "the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed." *Id.,* 543 U.S. at 569-70, 125 S.Ct. at 1195. These differences between juveniles and adults would play a pivotal role in *Miller*.

### D. *Graham v. Florida*: Life Imprisonment Without Parole is Unconstitutional for Juveniles Committing Non-Homicide Crimes

[¶23] Next, in *Graham*, the Court held that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." *Id.,* 560 U.S. at ___, 130 S.Ct. at 2030. The Court continued, "A juvenile is not absolved of responsibility for his actions, but his transgression 'is not as morally reprehensible as that of an adult.'" *Id.*, 560 U.S. at ___, 130 S.Ct. at 2026. Again the Court commented on the inherent differences between adult and juvenile offenders:

> No recent data provide reason to reconsider the Court's observations in *Roper* about the nature of juveniles. As petitioner's *amici* point out, developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of "irretrievably depraved character" than are the actions of adults. *Roper,* 543 U.S., at 570, 125 S.Ct. 1183. It remains true that "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." *Ibid.* These matters relate to the status of the offenders in question; and it is relevant to consider next the nature of the offenses to which this harsh penalty might apply.

*Id.,* 560 U.S. at ___, 130 S.Ct. at 2026-27 (some citations omitted).

[¶24] Finally, and of particular significance to Mr. Bear Cloud's case, Florida had no

parole system at the time, so executive clemency was Graham's only chance for release. *Id.,* 560 U.S. at ___, 130 S.Ct. at 2020. The Court, citing *Solem,* explained that a sentence of life without parole "deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence." *Id.,* 560 U.S. at ___, 130 S.Ct. at 2027 (citing *Solem*, 463 U.S. at 300-01, 103 S.Ct. 3001).

### E. *Miller v. Alabama***: Mandatory Life Imprisonment Without Parole is Unconstitutional for Juveniles, Regardless of the Crime**

[¶25] The United States Supreme Court's evolution on this issue finally led to *Miller*, 567 U.S. ___, 132 S.Ct. 2455. There, the Court held "that **mandatory** life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Id.,* 567 U.S. at ___, 132 S.Ct. at 2460 (emphasis added).

[¶26] Like *Roper* and *Graham*, the majority in *Miller* reviewed the inherent differences between juveniles and adults. The Court considered how the dissimilar characteristics impact the appropriateness of a life sentence without parole for a juvenile, stating, "'An offender's age' . . . 'is relevant to the Eighth Amendment,' and so 'criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed.'" *Id.,* 567 U.S. at ___, 132 S.Ct. at 2465-66 (quoting *Graham*, 130 S.Ct. at 2031). The Court reaffirmed the importance "that a sentencer have the ability to consider the 'mitigating qualities of youth.'" *Id.,* 567 U.S. at ___, 132 S.Ct. at 2467 (quoting *Johnson v. Texas*, 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993)). The Court explained that the flaw of imposing a mandatory life sentence without parole on a juvenile is it prevents the sentencing court from considering the defendant's youth, other attendant characteristics, and the circumstances of the crime:

> Such mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it. Under these schemes, every juvenile will receive the same sentence as every other—the 17–year–old and the 14–year–old, the shooter and the accomplice, the child from a stable household and the child from a chaotic and abusive one. And still worse, each juvenile (including these two 14–year–olds) will receive the same sentence as the vast majority of adults committing similar homicide offenses—but really, as *Graham* noted, a *greater* sentence than those adults will serve. In meting out the death penalty, the elision of all these differences would be strictly forbidden. And once again, *Graham* indicates that a similar rule should apply when a

7

juvenile confronts a sentence of life (and death) in prison.

*Id.,* 567 U.S. at ___, 132 S.Ct. at 2467-68 (footnote omitted).

[¶27]  Notably, the *Miller* majority refused to categorically bar sentencing juveniles to life imprisonment without the possibility of parole.  The Court stated that "we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require [the sentencer] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.*, 567 U.S. at ___, 132 S.Ct. at 2468 (footnote omitted).  The Court went on to note, however, that such sentences should be "uncommon":

> But given all we have said in *Roper, Graham* and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.  That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at the early age between 'the juvenile offender who crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'

*Id.,* 567 U.S. at ___, 132 S.Ct. at 2469.

[¶28]  In sum, *Miller* requires

> a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.  By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

*Id.,* 567 U.S. at ___, 132 S.Ct. at 2475.

## II.    Applying *Solem*, *Graham*, and *Miller* to Wyoming's Sentencing and Parole Structure for First-Degree Murder

[¶29] In considering the effect of United States Supreme Court jurisprudence on Wyoming's current sentencing and parole statutes, we must interpret the relevant statutes.

## A. Rules of Statutory Interpretation

[¶30] This Court's rules of statutory interpretation and application are well-known:

> This court interprets statutes by giving effect to the legislature's intent. . . . We begin by making an inquiry relating to the ordinary and obvious meaning of the words employed according to their arrangement and connection. . . . We give effect to every word, clause, and sentence and construe together all components of a statute *in pari materia* . . . . If a statute is clear and unambiguous, we simply give effect to its plain meaning. Only when we find a statute to be ambiguous do we resort to the general principles of statutory construction. An ambiguous statute is one whose meaning is uncertain because it is susceptible to more than one interpretation.
>
> > It is a basic rule of statutory construction that courts may try to determine legislative intent by considering the type of statute being interpreted and what the legislature intended by the language used, viewed in light of the objects and purposes to be accomplished. . . .
>
> We are guided by the full text of the statute, paying attention to its internal structure and the functional relation between the parts and the whole. Each word of a statute is to be afforded meaning, with none rendered superfluous. Further, the meaning afforded to a word should be that word's standard popular meaning unless another meaning is clearly intended. If the meaning of a word is unclear, it should be afforded the meaning that best accomplishes the statute's purpose.

*LM v. Laramie County Dep't of Family Servs. (In re MN),* 2007 WY 189, ¶¶ 4–5, 171 P.3d 1077, 1079–80 (Wyo. 2007) (internal citations omitted and parentheses and quotation marks omitted). Additionally, we presume that the Wyoming Legislature "intended a reasonable, just, and constitutional result." *Kunkle v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2005 WY 49, ¶ 11, 109 P.3d 887, 890 (Wyo. 2005).

## B. Analysis

[¶31] The language of the statutes in question is clear and unambiguous. Wyoming Statute § 6-2-101(b), under which Mr. Bear Cloud was sentenced, states:

> A person convicted of murder in the first degree shall be punished by death, life imprisonment without parole or life imprisonment according to law, except that no person shall be subject to the penalty of death for any murder committed before the defendant attained the age of eighteen (18) years.

Wyo. Stat. Ann. § 6-2-101(b) (LexisNexis 2009).[2] Thus, Wyoming provides two possible sentences for a juvenile convicted of first-degree murder: life imprisonment without the possibility of parole or life imprisonment "according to law." *Id.*

[¶32] The conflict with United States Supreme Court decisions arises because two other statutes prohibit parole for any person serving a life sentence of either sort:

> The [parole] board may grant a parole to any person imprisoned in any institution under sentence, **except a sentence of life imprisonment without parole or a life sentence**, ordered by any district court of this state, provided the person has served the minimum term pronounced by the trial court less good time, if any, granted under rules promulgated pursuant to W.S. 7-13-420.

Wyo. Stat. Ann. § 7-13-402(a) (LexisNexis 2009) (emphasis added).

> A sentence of life or life imprisonment which is not specifically designated as a sentence of life imprisonment without parole is subject to commutation by the governor. A person sentenced to life or life imprisonment is not eligible for parole unless the governor has commuted the person's sentence to a term of years.

Wyo. Stat. Ann. § 6-10-301(c) (LexisNexis 2009); *see also Weldon v. State*, 800 P.2d 513, 514 (Wyo. 1990) (stating that "the only remission except death that can be provided from the life sentence is by action through the executive power of commutation"). Thus, the only way that a person serving a life sentence according to law may become eligible for parole in Wyoming is if the governor commutes the life sentence to a term of years.

[¶33] As discussed earlier, the United States Supreme Court has refused to equate the

---

[2] The 2009 versions of the statutes are quoted here because they were applicable at Mr. Bear Cloud's sentencing, and there have been no substantive changes to any of these statutory subsections since.

10

hope of executive clemency and subsequent parole to the realistic possibility of parole. *Solem*, 463 U.S. at 300-01, 103 S.Ct. at 3015. The practical effect of disregarding the possibility of executive clemency in Wyoming is that "life imprisonment according to law" becomes practically identical to "life imprisonment without parole" because both exclude any real possibility of parole. Taking these three statutes together, we conclude that both possible sentences for first-degree murder in Wyoming violate *Miller's* prohibition against mandatory sentences of life without the possibility of parole for juveniles. *See Miller*, 567 U.S. at ___, 132 S.Ct. at 2467-68.

[¶34] We conclude as well, based upon *Solem*, *Graham*, and *Miller*, that Wyoming's current sentencing and parole scheme for persons convicted of first-degree murder, which murder occurred before those persons were 18 years of age, violates the Eighth Amendment because it has the practical effect of mandating life in prison without the possibility of parole. *See Miller*, 567 U.S. at ___, 132 S.Ct. at 2469.

## III.  Consequences of *Miller* on Sentences for Juveniles Convicted of First-Degree Murder in Wyoming

[¶35] We recognize that the authority to determine possible penalties for criminal offenses is vested in the Wyoming Legislature. We also readily acknowledge that it is "axiomatic under our system of government that courts may not legislate." *Midwest Hotel Co. v. State Bd. of Equalization*, 39 Wyo. 461, 273 P. 696, 697 (1929). While we acknowledge our role in interpreting rather than rewriting the law, we must provide guidance to the district courts that will face sentencing issues on remand in this case and in other pending cases, at least until the Legislature amends the sentencing scheme for juveniles in Wyoming to accord with *Miller* and other Eighth Amendment jurisprudence. Therefore, we provide the following framework to assure sentencing for juveniles convicted of first-degree murder in compliance with United States Supreme Court law while simultaneously supplying a consistent methodology for the district courts to implement pending future action from our Legislature.

[¶36] Mr. Bear Cloud was sentenced to life imprisonment "according to law." Wyoming's statutes do not define what body of law governs the phrase "according to law;" consequently, we consider its everyday, common meaning. *See State ex rel. Wyoming Dept. of Revenue v. Hanover Compression, LP*, 2008 WY 138, ¶ 10, 196 P.3d 781, 785 (Wyo. 2008) ("Such term is not statutorily defined, thus a determination of legislative intent allows consideration of the undefined term according to its common meaning."). This Court concludes that the phrase must include United States Supreme Court case law for the simple reason that the decisions of that Court *are* the law, as binding upon the States as any acts of the legislative bodies. In turn, *Miller* requires that we hold Wyoming Statutes § 6-10-301(c) and § 7-13-402(a), the statutes which bar parole for offenders serving life sentences, unconstitutional as applied to juveniles

11

sentenced to life imprisonment according to law because these two statutes effectively mandate a sentence of life in prison without the possibility of parole for juvenile offenders. *See Miller*, 567 U.S. at ___, 132 S.Ct. at 2469 (holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders"). By holding these statutes inapplicable to juveniles sentenced to life according to law, Wyoming's sentencing scheme for first-degree murder complies with the dictates of *Solem*, *Graham*, and *Miller*. *See supra* ¶¶ 19-28. Importantly, however, Wyoming Statute § 6-2-101(b), under which Mr. Bear Cloud was sentenced, is upheld as constitutional. *See Miller,* 567 U.S. at ___, 132 S.Ct. at 2469 (refusing to categorically bar a sentence of life without parole for juveniles convicted of homicide).

[¶37] We find this statutory interpretation most appropriate for two reasons. First, it minimizes our intrusion into any legislative function while allowing trial courts to impose the existing possible statutory sentences for first-degree murder in a constitutionally permissible way. Second, it separates "life imprisonment without parole" from "life imprisonment according to law," making them truly discrete, individual punishments when applied to juveniles.

[¶38] Accordingly, we hold that Wyoming Statutes §§ 6-10-301(c) and 7-13-402(a) are unconstitutional as applied to juveniles who have been sentenced to life imprisonment according to law under Wyoming Statute § 6-2-101(b). As noted above, these statutes prevent a juvenile who has been sentenced to life imprisonment for first-degree murder from having a meaningful opportunity for parole in violation of the Eighth Amendment. These statutes also fail to provide a sentencing court the discretion to determine whether a juvenile homicide offender should be eligible for parole at some point in the future, as United States Supreme Court case law requires.

## IV.    **Complying with *Solem*, *Graham*, and *Miller* in Wyoming**

[¶39] The United States Supreme Court's case law reviewed above requires a different sentencing scheme for juvenile homicide offenders than that imposed in Mr. Bear Cloud's case.

### A.    *Miller's* **Strictures**

[¶40] It is important to determine the parameters of *Miller* in order to provide sufficient guidance to district courts facing the prospect of sentencing a juvenile convicted of committing first-degree murder. Consistent with *Graham* and *Roper*, the majority opinion in *Miller* requires that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest penalty for juveniles." *Miller*, 567 U.S. at ___, 132 S.Ct. at 2475. Specifically, "youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole." *Id.,* 567

U.S. at ___, 132 S.Ct. at 2565.

[¶41] *Miller's* primary criticism of mandatory sentences of life imprisonment without parole for juveniles is that such a sentencing scheme "prevents those meting out punishment from considering a juvenile's 'lessened culpability' and greater 'capacity for change.'" *Id.,* 567 U.S. at ___, 132 S.Ct. at 2460 (quoting *Graham,* 560 U.S. at ___, 130 S.Ct. at 2026-27, 2029-30. It also "runs afoul of our cases' requirement of individualized sentencing for defendants facing the most serious penalties." *Id.* To accomplish individualized sentencing for juveniles, *Miller* reiterated that the United States Supreme Court requires "sentencing authorities [to] consider the characteristics of a defendant and the details of his offense before sentencing him . . . ." *Id.,* 567 U.S. at ___, 132 S.Ct. at 2463-64. It violates the Cruel and Unusual Clause of the Eighth Amendment to sentence a juvenile who commits first-degree murder to a sentence that is disproportional to the offense. *See Atkins v. Virginia*, 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (stating that "it is a precept of justice that punishment for crime should be graduated and proportioned to [the] offense."). The key to achieving proportional punishment is for the sentencing court to inquire into the facts and circumstances surrounding the juvenile offender and the crime.

### B. Meeting *Miller's* Requirements in Wyoming

[¶42] To fulfill *Miller's* requirements, Wyoming's district courts must consider the factors of youth and the nature of the homicide at an individualized sentencing hearing when determining whether to sentence the juvenile offender to life without the possibility of parole or to life according to law. While not exhaustive, the *Miller* Court specifically indicated some factors for a trial court to consider at sentencing include:

(a) "the character and record of the individual offender [and] the circumstances of the offense," *Miller*, 567 U.S. at ___, 132 S.Ct. at 2467 (quotation marks omitted);

(b) "the background and mental and emotional development of a youthful defendant," *id.*;

(c) a juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate the risks and consequences," *id.,* 567 U.S. at ___, 132 S.Ct. at 2468;

(d) "the family and home environment that surrounds" the juvenile, "no matter how brutal or dysfunctional," *id.*;

(e) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressure may have affected" the juvenile, *id.*;

(f) whether the juvenile "might have been charged and convicted of a lesser offense if not for incompetencies associated with youth," e.g., the juvenile's relative inability to deal with police and prosecutors or

to assist his own attorney, *id.*; and

 (g) the juvenile's potential for rehabilitation, *id.*

[¶43] The United States Supreme Court also explained that the trial court must consider these factors at the time of sentencing in determining the juvenile offender's eligibility for parole. *Id.,* 567 U.S. at ___, 132 S.Ct. at 2474-75. Examining these factors at the beginning of the case in determining whether to try a juvenile as an adult, i.e., pursuant to a motion to transfer to juvenile court, is not sufficient to meet *Miller's* requirements. *Id.,* 567 U.S. at ___, 132 S.Ct. at 2475 ("the discretion available to a judge at the transfer stage cannot substitute for discretion at post-trial sentencing in adult court—and so cannot satisfy the Eighth Amendment").

[¶44] In sum, *Miller* requires an individualized sentencing hearing for every juvenile convicted of first-degree murder at which the sentencing court must consider the individual, the factors of youth, and the nature of the homicide in determining whether to order a sentence that includes the possibility of parole. *Miller* does not guarantee the possibility of parole for a convicted juvenile homicide offender, but *Miller* does mandate that a meaningful review and consideration be afforded by the sentencing court.

[¶45] To conform to recent United States Supreme Court jurisprudence, when a Wyoming district court sentences a juvenile convicted of first-degree murder, the sentencing court shall hold an individualized sentencing hearing that conforms to the dictates of *Miller*. The potential sentences authorized by both the Wyoming Legislature and the United States Supreme Court are "life imprisonment without parole" or "life imprisonment according to law." Wyo. Stat. Ann. § 6-2-101(b); *Miller*, 567 U.S. at ___, 132 S.Ct. at 2469 (refusing to categorically bar a sentence of life without parole for juvenile homicide offenders).

[¶46] If at the individualized sentencing hearing the trial court determines the juvenile offender should not be foreclosed from the potential for parole in the future, the appropriate sentence will be life imprisonment according to law. In order to conform to *Solem*, *Graham,* and *Miller*, however, the juvenile offender not deprived of the possibility of parole at sentencing must be afforded some meaningful opportunity for release beyond executive clemency. Therefore, the opportunity for true parole at some point in time (as opposed to executive clemency) must be afforded to every juvenile sentenced to "life imprisonment according to law."

[¶47] To achieve such meaningful opportunity for release, and because the current statutory scheme provides no other method by which to determine parole eligibility, we hold that when a trial court imposes a sentence of life imprisonment according to law upon a juvenile homicide offender, the trial court must also pronounce a specific period of time which must pass before the juvenile becomes parole eligible. We do not here suggest a minimum period of time. That should be determined by the sentencing court

14

after consideration of the individual factors discussed above. After the specified period of time expires, the juvenile offender shall become eligible for parole review before the state board of parole. The trial court should consider the criteria set out above and discussed in *Miller* when determining how long a juvenile offender must wait before becoming eligible for parole review. *Miller* necessitates the sentencing court exercise discretion in determining whether a juvenile homicide offender should receive the future possibility of parole. And logic dictates that to effectuate the sentence imposed, including the specific period of time until the offender becomes parole eligible, the parole board must provide a meaningful determination and review when parole eligibility arises.

## CONCLUSION

[¶48]  For the reasons discussed herein, this Court concludes that Wyoming Statutes § 6-10-301(c) and § 7-13-402(a) are unconstitutional as applied to juvenile offenders sentenced to life imprisonment according to law. Wyoming Statute § 6-2-101(b), however, is constitutional. To comply with Eighth Amendment jurisprudence, Wyoming trial courts that sentence juveniles convicted of first-degree murder to "life imprisonment according to law" also shall pronounce a specified period of time during which the juvenile offender is ineligible for parole. Once the specified period expires, the juvenile offender shall become eligible for parole review by the state board of parole, the same as all other parole-eligible offenders.

[¶49]  Mr. Bear Cloud's sentence for his first-degree murder conviction violated the Eighth Amendment and applicable United States Supreme Court case law. Accordingly, we vacate Mr. Bear Cloud's sentence for that conviction and remand this case to the district court for a new sentencing hearing consistent with this opinion.