# IN THE SUPREME COURT, STATE OF WYOMING

# 2017 WY 34

OCTOBER TERM, A.D. 2016

March 22, 2017

KENNETH DALE NICODEMUS,

Appellant
(Defendant),

v.                                                          S-16-0186

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sublette County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*

>   Office of the State Public Defender:  Diane Lozano, State Public Defender Tina N. Olson, Chief Appellate Counsel*; and Eric M. Alden, Senior Assistant Appellate Counsel.  Argument by Mr. Alden.

*Representing Appellee:*

>   Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne Martens, Senior Assistant Attorney General; and Joshua C. Eames, Assistant Attorney General.  Argument by Mr. Eames.

*Order Allowing Withdrawal of Counsel entered on September 1, 2016.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]   In 1992, Kenneth Nicodemus pled guilty to two counts of first degree murder and one count of larceny for crimes he committed when he was eighteen years old.  He was sentenced to two consecutive sentences of life imprisonment on the murder counts and eight to ten years in prison on the larceny count, to run consecutive to the life sentences. In 2014, Mr. Nicodemus filed a Rule 35 motion to correct an illegal sentence, contending his life sentences violated the federal constitution's protection against cruel and unusual punishment and the Wyoming constitution's protection against cruel or unusual treatment.  The district court denied the Rule 35 motion, and we affirm.

## ISSUES

[¶2]   Mr. Nicodemus states the issue on appeal as:

> I.      Mr. Nicodemus committed two murders when he was eighteen years of age.  At that time the age of majority in Wyoming was nineteen.  Does the imposition of a sentence of life without parole in that circumstance violate the constitutional prohibition of cruel or unusual punishment?

The State responds with two issues, which it frames as follows:

> I.      *Res judicata* bars consideration of issues that could have been, but were not, brought in a prior proceeding. Kenneth Nicodemus did not appeal his convictions and now argues that his life sentences violate the United States and Wyoming Constitutions.  Does *res judicata* bar consideration of his arguments, twenty-four years after his sentences became final?

> II.     A court may not impose a sentence that violates the constitution or statute.  In 1992, the district court sentenced Nicodemus to two life sentences for murdering two people when he was eighteen years old.  Does a life sentence for an adult who commits multiple murders violate the United States or Wyoming Constitutions?

## FACTS

[¶3]   Mr. Nicodemus challenges his sentence for crimes that occurred at the Ponderosa Lodge near Pinedale, Wyoming.  For some time in 1991, Mr. Nicodemus worked at the Ponderosa Lodge for its owners, Gary and Sue Weiss. On April 6, 1992, after that

1

employment had concluded, Mr. Nicodemus returned to the lodge. He drove to a location about a mile and a half from the lodge, parked his vehicle, and walked the remaining distance. Once there, he waited for the Weisses to leave and then broke into the lodge to check the register for cash. Finding no cash in the register, Mr. Nicodemus then walked back to a travel trailer on the property and knocked one of its doors off the hinges, hoping to find valuables in the trailer. He found a coin collection, some cash, and a .44 magnum revolver, which he loaded and placed in the small of his back.

[¶4]     As Mr. Nicodemus continued to look through the trailer, he heard the Weisses pull into their property. The Weisses looked into the trailer, and when Mr. Weiss saw Mr. Nicodemus, he threatened him. Mr. Nicodemus then ran out the trailer's back door and down a road. Mr. Weiss fired a gun, and Mr. Nicodemus returned fire, hitting Mr. Weiss. Mr. Weiss then retreated to the other side of the trailer, and Mr. Nicodemus followed. When Mr. Nicodemus reached Mr. Weiss, he was with Mrs. Weiss, and neither had a weapon. Mr. Nicodemus shot them both, but each was able to get away from him. He caught up to Mr. Weiss first, and while Mr. Weiss was on his knees, wheezing, Mr. Nicodemus shot him in the back of the head. He then located Mrs. Weiss and shot her multiple times.

[¶5]     Mr. Nicodemus took the bodies of Mr. and Mrs. Weiss about three-quarters of a mile from the lodge and pushed them over an embankment to delay their discovery. When leaving the property, Mr. Nicodemus stole the Weiss truck, as well as a coin collection, four rifles, a shotgun, a radio, and a purse containing fifty dollars.

[¶6]     Mr. Nicodemus was located and arrested in Rock Springs, where he had made statements to witnesses concerning his killing of the Weisses, and was charged with two counts of first degree murder and one count of larceny. On May 27, 1992, Mr. Nicodemus pled guilty to the three charges and was sentenced to a term of life imprisonment for each murder, to be served consecutively, and a term of eight to ten years for the larceny count, to be served consecutive to the two life sentences.

[¶7]     On December 19, 1992, Mr. Nicodemus, acting *pro se*, filed a letter with the district court, which the court treated as a motion for sentence reduction. Through that motion, Mr. Nicodemus expressed dissatisfaction with the legal representation that led to his guilty plea and asked that the court order his sentences to run concurrently because of his youth and because he acted in self defense when he killed the Weisses. The district court denied the motion.

[¶8]     On November 21, 2014, Mr. Nicodemus filed a *pro se* Rule 35 motion to correct an illegal sentence. Through that motion, Mr. Nicodemus argued that his sentence was effectively a life sentence without the possibility of parole and that because he was a juvenile at the time he committed the crimes, such a sentence violates the Wyoming and federal constitutional protections against cruel and/or unusual punishment. On May 5,

2

2016, the district court entered an order denying Mr. Nicodemus' Rule 35 motion. Mr. Nicodemus thereafter timely filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

[¶9] Whether a challenge is barred by *res judicata* is a question of law that we review *de novo*. *Bird v. State*, 2015 WY 108, ¶ 9, 356 P.3d 264, 267 (Wyo. 2015) (citing *Ferguson v. State*, 2013 WY 117, ¶ 8, 309 P.3d 831, 833 (Wyo. 2013)). Whether a sentence is illegal is likewise a question of law that we review *de novo*. *Barela v. State*, 2016 WY 68, ¶ 6, 375 P.3d 783, 786 (Wyo. 2016) (citing *Endris v. State*, 2010 WY 73, ¶ 13, 233 P.3d 578, 581 (Wyo. 2010)).

## DISCUSSION

### A.   *Res Judicata*

[¶10] The State contends that because Mr. Nicodemus bases his present challenge to his life sentences solely on the Wyoming Constitution, and not on intervening federal or state precedent, he could have made the same challenge through a direct appeal or in his first motion for a sentence reduction. Because Mr. Nicodemus did not do so, the State argues his challenge is barred by the doctrine of *res judicata*.

[¶11] *Res judicata* bars litigation of issues that were or could have been determined in a prior proceeding, and while a court may correct an illegal sentence under W.R.Cr.P. 35(a) at any time, the bases for correcting the sentence remain subject to *res judicata*. *Bird*, ¶ 10, 356 P.3d at 267 (citing *Dax v. State*, 2012 WY 40, ¶¶ 9-10, 272 P.3d 319, 321 (Wyo. 2012)). In determining whether *res judicata* bars a challenge, we consider:

> (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them.

*Poignee v. State*, 2016 WY 42, ¶ 12, 369 P.3d 516, 518 (Wyo. 2016) (quoting *Kurtenbach v. State*, 2013 WY 80, ¶ 6, 304 P.3d 939, 940–41 (Wyo. 2013)).

[¶12] Based on *res judicata*, this Court may decline to consider an issue if a party fails to show good cause why that issue was not raised at an earlier opportunity. *Palmer v. State*, 2016 WY 46, ¶ 6, 371 P.3d 156, 158 (Wyo. 2016) (quoting *Bird*, ¶ 10, 356 P.3d at 267). "However, 'our rulings make clear that the application of the doctrine is discretionary.'" *Palmer*, ¶ 7, 371 P.3d at 158 (quoting *Patterson v. State*, 2013 WY 153, ¶ 11, 314 P.3d 759, 762 (Wyo. 2013)).

[¶13] Since Mr. Nicodemus was sentenced in 1992, the United States Supreme Court has issued a series of decisions pertaining to the Eighth Amendment's restrictions on the sentencing of juvenile offenders. *See Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed. 2d 407 (2012) (juvenile offender may not be subjected to mandatory sentence of life without possibility of parole for homicide conviction); *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (juvenile offender may not be sentenced to life without possibility of parole for non-homicide conviction); *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed. 2d 1 (2005) (juvenile offender may not be sentenced to death). In each of these decisions, the Court defined a juvenile as one who was under the age of eighteen at the time he committed his crimes. *Miller*, 567 U.S. ___, 132 S.Ct. at 2460; *Graham*, 560 U.S. at 74-75, 130 S.Ct. at 2030; *Roper*, 543 U.S. at 578, 125 S.Ct. at 1200.

[¶14] The State acknowledges these changes but contends that Mr. Nicodemus is not seeking application of the federal restrictions and is instead asking the Court to adopt separate state constitutional protections—protections that could have been asserted in an earlier proceeding, such as a direct appeal. The State's view of Mr. Nicodemus' challenge to his life sentence is understandable given the way Mr. Nicodemus framed the headings for his arguments.[1] Nonetheless, while the argument headings suggest purely state constitutional claims, the arguments themselves present a two-pronged challenge, one prong being a federal challenge and the other a state constitutional challenge. In his first argument, Mr. Nicodemus contends that *Miller* applies and should not be read to set a bright line rule that only an offender under the age of eighteen may be considered a juvenile for purposes of the Eighth Amendment protections. In this argument, he contends that *Miller* extends its protections to an offender who was either under the age of eighteen when he committed his offense or was defined by state law as a juvenile when he committed his offense. In his second argument, Mr. Nicodemus argues that the Wyoming constitutional prohibition on cruel or unusual punishment is more protective than its federal counterpart, and his life sentences violated that prohibition.

[¶15] With respect to the application of *Miller*, Mr. Nicodemus could not have raised that issue by direct appeal or in his earlier motion to reduce his sentence, given that *Miller* was not decided until 2012. With respect to his state constitutional challenge, the State is correct that Mr. Nicodemus arguably could have asserted that challenge by direct appeal or in his motion to reduce his sentence. There is no question, however, that federal constitutional restrictions on the sentencing of juvenile offenders have changed significantly since Mr. Nicodemus was sentenced in 1992. While Mr. Nicodemus does

---

[1] The heading for Mr. Nicodemus' first argument reads: "The Wyoming Constitution's bar on cruel or unusual punishment adopts the *Miller* standard prohibiting mandatory life without parole sentences against children and applies the Wyoming statutory determination of the age of majority to determine who is a minor." The heading for his second argument reads: "The protections of the Wyoming Constitution against cruel or unusual punishment are broader than the Eighth Amendment and prohibit punishments based on retribution and juvenile life without parole."

not base his challenge directly on those federal precedents, he does extrapolate from them in making his argument. Under these circumstances, we will exercise our discretion to consider his challenge even though it could have been brought in an earlier proceeding.

## B.      Legality of Mr. Nicodemus' Life Sentences

[¶16]  Mr. Nicodemus was sentenced to two consecutive life sentences for the murder of the Weisses, which was effectively a sentence of life without the possibility of parole.[2] We will address first Mr. Nicodemus' argument that his life sentences violated *Miller* and then turn to Mr. Nicodemus' state constitutional arguments.

### 1.      *Miller* Sentencing Requirements

[¶17]  In *Miller*, the Supreme Court held that in the sentencing of a juvenile offender for a homicide offense, the Eighth Amendment prohibits the imposition of a mandatory sentence of life imprisonment without the possibility of parole. *Miller*, 567 U.S. ___, 132 S.Ct. at 2475. The Court did not foreclose the sentence altogether but instead held that the sentencing court "must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id*. We have summarized the *Miller* requirement as follows:

> In sum, *Miller* requires an individualized sentencing hearing for every juvenile convicted of first-degree murder at which the sentencing court must consider the individual, the factors of youth, and the nature of the homicide in determining whether to order a sentence that includes the possibility of parole. *Miller* does not guarantee the possibility of parole for a convicted juvenile homicide offender, but *Miller* does mandate that a meaningful review and consideration be afforded by the sentencing court.

*Bear Cloud II*, ¶ 44, 294 P.3d at 47.

[¶18]  In announcing its ruling in *Miller*, the Supreme Court held that the requirement to consider the mitigating circumstance of an offender's youth applies when the offender is under the age of eighteen: "We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 567 U.S. ___, 132 S.Ct. at 2460. In *Bear Cloud II*, we applied *Miller* and accepted the age of eighteen as the line

---

[2] We have recognized that the sentence of life imprisonment according to law, which allows an offender to be eligible for parole only if the governor commutes the sentence to a term of years, is the functional equivalent of life without the possibility of parole. *Bear Cloud v. State (Bear Cloud II)*, 2013 WY 18, ¶ 33, 294 P.3d 36, 45 (Wyo. 2013).

5

where an offender is treated differently for purposes of imposing a sentence of life without the possibility of parole:

> We conclude as well, based upon *Solem*, *Graham*, and *Miller*, that Wyoming's current sentencing and parole scheme for persons convicted of first-degree murder, **which murder occurred before those persons were 18 years of age**, violates the Eighth Amendment because it has the practical effect of mandating life in prison without the possibility of parole. *See Miller*, 567 U.S. at ——, 132 S.Ct. at 2469.

*Bear Cloud II*, ¶ 34, 294 P.3d at 45 (emphasis added); *Poitra v. State*, 2016 WY 20, ¶ 23, 368 P.3d 284, 289 (Wyo. 2016)) ("*Miller,* on the other hand, directly requires consideration of a meaningful opportunity to parole for those whose crimes were committed when they were under the age of eighteen.").

[¶19] Despite what appears to be a clear holding by the U.S. Supreme Court that eighteen is the cutoff for imposing the *Miller* protections, Mr. Nicodemus urges this Court to hold that the cutoff age may vary. He contends that the Supreme Court did not intend to impose a bright line rule extending the *Miller* protections to only those offenders under the age of eighteen and instead should be read to extend its protections to an offender who was either under the age of eighteen when he committed his offense or was defined by state law as a juvenile when he committed his offense. He argues that the Supreme Court's enunciation of a rule governing offenders under eighteen was focused on societal norms drawn from states, and because it is the state that should determine an offender's culpability based on maturity, the rule was never intended to supplant a state's ability to choose a more protective age of majority.

[¶20] We do not disagree that a state has the authority to set its own age of majority. Nor do we disagree that a state may announce a rule that is more protective than that announced by the Supreme Court. *Norgaard v. State*, 2014 WY 157, ¶ 24, 339 P.3d 267, 274 (Wyo. 2014) (states required to ensure their laws provide at least the protection set by federal requirements but may impose greater protections). We do disagree, however, that the Supreme Court in *Miller* intended to announce an Eighth Amendment protection that varied depending on state law.

[¶21] In requiring individualized consideration of a juvenile offender's youth before sentencing him to life in prison without the possibility of parole, the *Miller* Court followed the reasoning of *Roper* and *Graham*. *Miller*, 567 U.S. ___, 132 S.Ct. at 2465-69. The Court held its ruling applied to juvenile offenders under eighteen, which was also the age at which the rulings in *Graham* and *Roper* imposed their corresponding protections. *Miller*, 567 U.S. ___, 132 S.Ct at 2460; *Graham*, 560 U.S. at 74-75, 130 S.Ct. at 2030; *Roper*, 543 U.S. at 574, 125 S.Ct. at 1197-98. *Roper* was the first in this

6

line of cases, and it was in that case that the Court set eighteen as the age that distinguishes a juvenile offender from an adult offender for sentencing purposes. The Court reasoned:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. ***For the reasons we have discussed, however, a line must be drawn.*** The plurality opinion in *Thompson* drew the line at 16. In the intervening years the *Thompson* plurality's conclusion that offenders under 16 may not be executed has not been challenged. The logic of *Thompson* extends to those who are under 18. The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

*Roper*, 543 U.S. at 574, 125 S.Ct. at 1197-98 (emphasis added).

[¶22]  Plainly, the Court in *Roper* intended to and did draw a line between juvenile and adult offenders for purposes of Eighth Amendment protections.  It extended Eighth Amendment protections for juvenile offenders to those under the age of eighteen—not to those under the age of eighteen as well as any offender otherwise defined as a juvenile under state law.

[¶23]  To be sure, as we noted above, a state may choose to set a more protective line between juvenile and adult offenders.  Notably, however, when Wyoming enacted legislation to bring its life imprisonment statutes into compliance with the *Miller* requirements, it did not choose a more protective line.  It extended the sentencing protections only to those who were under the age of eighteen at the time of their offense:

> Any sentence other than a sentence specifically designated as a sentence of life imprisonment without parole is subject to commutation by the governor. A person sentenced to life imprisonment for an offense committed after the person reached the age of eighteen (18) years is not eligible for parole unless the governor has commuted the person's sentence to a term of years. A person sentenced to life imprisonment for an offense committed before the person reached the age of eighteen (18) years shall be eligible for

7

> parole after commutation of his sentence to a term of years or after having served twenty-five (25) years of incarceration, except that if the person committed any of the acts specified in W.S. 7-13-402(b) after having reached the age of eighteen (18) years the person shall not be eligible for parole.

Wyo. Stat. Ann. § 6-10-301(c) (LexisNexis 2015); see also *Poitra*, ¶ 10, 368 P.2d at 287, n.3 (noting Wyo. Stat. § 6-10-301(c) was legislative extension of *Miller* protections).

[¶24]  Mr. Nicodemus nonetheless asserts that although Wyoming law may not currently be more protective than the line drawn by the Supreme Court, it was more protective in 1992 when he committed his offenses.  In support of this assertion, he points to the fact that in 1992, Wyoming's statutory age of majority was nineteen.  From this, he contends that since he was only eighteen years old and had not reached the age of majority when he committed his offenses in 1992, he should be entitled to the *Miller* sentencing protections extended to juvenile offenders.  We disagree.

[¶25]  It is correct that in 1992 the Wyoming statutory age of majority was nineteen.  The governing statute read:

> Upon becoming nineteen (19) years of age, an individual reaches the age of majority and as an adult acquires all rights and responsibilities granted or imposed by statute or common law, *except as otherwise provided by law*.

Wyo. Stat. Ann. § 14-1-101(a) (Michie 1992 Cum. Supp.) (emphasis added).

[¶26]  At that same time, however, the law governing the penalty for first degree murder, provided:
> A person convicted of murder in the first degree shall be punished by death or life imprisonment according to law, except that no person shall be subject to the penalty of death for any murder committed before the defendant attained the age of sixteen (16) years.

Wyo. Stat. Ann. § 6-2-101(b) (Michie 1992 Cum. Supp.); *see also* 1989 Wyo. Sess. Laws, ch. 171, p. 293.

[¶27]  When these statutes are read together, it is clear that while the legislature in 1992 defined nineteen as the age of majority for a number of purposes, it did not do so for purposes of determining criminal culpability. *See also* Wyo. Stat. Ann. § 14-6-203(f)(iii) (Michie 1985 Cum. Supp.) (giving prosecuting attorney discretion to commence criminal proceedings in either juvenile or district court where offender has attained the age of

seventeen). For purposes of culpability and responsibility for the crime of first degree murder, in particular, the legislature plainly did not consider an eighteen-year-old offender to be a child or a juvenile offender.

[¶28] Mr. Nicodemus had reached the age of eighteen when he committed his offenses in 1992, and he therefore is not entitled to the *Miller* sentencing protections. Nothing in the 1992 law defining the age of majority changes that.

## 2.    Sentencing Protections under the Wyoming Constitution

[¶29] Mr. Nicodemus next contends that Wyoming's constitutional protection against cruel or unusual punishment is broader than its federal counterpart, and Wyoming's 1992 penal code violated those protections. In particular, he argues Wyo. Stat. Ann. § 6-2-101(b), as it read in 1992, "mandated a sentence of life without parole for a person defined as a child by the state legislature," and was therefore unconstitutional. This being a constitutional challenge to a statute, we consider it in the following light:

> In reviewing a constitutional challenge to a statute, we presume the statute is constitutional, and any doubt is resolved in favor of the statute's constitutionality. *Bear Cloud v. State*, 2013 WY 18, ¶ 15, 294 P.3d 36, 41 (Wyo.2013); *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 33, 200 P.3d 774, 784 (Wyo.2009). The party challenging the constitutionality of a statute bears the burden of proving the statute is unconstitutional. *Id*. "That burden is a heavy one 'in that the appellant must clearly and exactly show the unconstitutionality beyond any reasonable doubt.'" *Id*. (quoting *Cathcart v. Meyer*, 2004 WY 49, ¶ 7, 88 P.3d 1050, 1056 (Wyo.2004)). Courts have a duty to uphold the constitutionality of statutes if at all possible, but it is equally imperative that we declare legislative enactments invalid when they transgress the Wyoming Constitution. *Hoem v. State*, 756 P.2d 780, 782 (Wyo.1988).

*Kordus v. Montes*, 2014 WY 146, ¶ 6, 337 P.3d 1138, 1139-40 (Wyo. 2014).

[¶30] At the outset, we reject the premise that in 1992 Mr. Nicodemus was statutorily a "child" for sentencing purposes. As noted above, the 1992 statute defining the age of majority generally did not purport to draw the line between child and adult for all purposes, and the legislature assigned criminal responsibility, particularly for the offense of first degree murder, at a younger age. The question we must answer, then, is not whether the Wyoming Constitution prohibits sentencing a "child" to life in prison without

the possibility of parole, but rather whether it prohibits sentencing an eighteen-year-old to life without the possibility of parole.

[¶31] In arguing that it does, Mr. Nicodemus cites to article 1, section 14 of the Wyoming Constitution, contending that its bar against cruel or unusual punishment must be read in conjunction with other provisions of article 1: section 5 (prohibiting imprisonment for debt); section 15 (penal code to be framed on principles of reformation and prevention); and section 16 (requiring humane treatment of prisoners). [3] While Mr. Nicodemus cites to all of these provisions, his primary argument is that his sentence is cruel or unusual under article 1, section 14 because it is inconsistent with the principles of reformation and prevention mandated by section 15.

[¶32] In arguing his state constitutional protections, Mr. Nicodemus has framed his analysis such that it complies with the requirements this Court has established for assertion of an independent state constitutional protection. *See O'Boyle v State*, 2005 WY 83, ¶ 24, 117 P.3d 401, 408 (Wyo. 2005) (citing *Saldana v. State*, 846 P.2d 604, 622 (Wyo. 1993)) (listing criteria for analyzing state constitutional claim). We conclude, however, that Mr. Nicodemus has not met his substantial burden of proving the unconstitutionality of the 1992 statute under which he was sentenced.

[¶33] The Wyoming Constitution directs that "[t]he penal code shall be framed on the humane principles of reformation and prevention." Wyo. Const. art. 1, § 15. In arguing that it is cruel or unusual to sentence an eighteen-year-old offender to life without the possibility of parole, Mr. Nicodemus starts from a premise that such a sentence is fundamentally at odds with the article 1, section 15 principles. This is a premise our Court has already rejected:

> As the state points out, this court effectively answered the question raised here by Castle when it held that the death penalty provisions do not violate Wyo. Const. art. 1, § 15. *Hopkinson v. State*, 664 P.2d 43, 64 (Wyo.1983), cert. denied, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246. If the death penalty, which results in the ultimate irrevocable separation from society, is seen "as framed on the human[e] principles of reformation and prevention," then a life sentence without possibility of return to society passes muster as well. *Id*.

---

[3] The State contends that the Court should not address Mr. Nicodemus' arguments concerning these other provisions because they were not raised below. Mr. Nicodemus did, however, raise his state constitutional challenge below and that claim was generally the same as his claim on appeal: his sentence violates Wyoming's more protective bar against cruel or unusual sentences. His reference to the other provisions, and in particular article 1, section 15, simply expands on that analysis, and we will therefore consider the argument.

*Castle v. State*, 842 P.2d 1060, 1061 (Wyo. 1992).

[¶34] We also reject Mr. Nicodemus' contention that article 1, section 15 limits the objectives that may be served by a sentencing statute and precludes objectives such as retribution, deterrence, and removal from society. Our decisions have, in fact, repeatedly recognized the validity of such objectives. *See Mendoza v. State*, 2016 WY 31, ¶ 18, 368 P.3d 886, 893 (Wyo. 2016) (recognizing rehabilitation, punishment, deterrence, and removal as appropriate sentencing purposes); *Croy v. State*, 2014 WY 111, ¶ 9, 334 P.3d 564, 568 (Wyo. 2014) (same); *Cohee v. State*, 2005 WY 50, ¶ 15, 110 P.3d 267, 272 (Wyo. 2005) (retribution and deterrence appropriate considerations in imposition of punishment); *Wright v. State*, 670 P.2d 1090, 1093 (Wyo. 1983) (recognizing sentencing objectives of: "(1) rehabilitation, (2) punishment (specific deterrence and retribution), (3) example to others (general deterrence), and (4) removal from society (incapacitation or protection of the public)").

[¶35] Mr. Nicodemus acknowledges this precedent but contends that the decisions were wrong in so holding. He argues the framers of the Wyoming Constitution made clear their intent to limit the objectives of sentencing in a case decided when two of the constitution's authors were members of this Court: *State v. Bd. of Com'rs of Laramie County*, 55 P. 451 (Wyo. 1898). We find no such intent reflected in that decision.

[¶36] *Laramie County* involved a tax dispute between the State and Laramie County concerning, among other things, whether prison property was taxable or whether it was exempt from taxation under the exemption applicable to charitable institutions. *Laramie County*, 55 P. at 455-56. In deciding the prison was a charitable institution, the Court stated:

> A writer on political science has said on this subject: "Thus it may be seen that the modern prison system, at every stage of its evolution, revolves around one central thought,-the possibility of reformation; that the reformation of the prisoner is its one animating purpose; that the hope of reformation is the motive to which it owes its origin; and posterity will pronounce judgment upon it from this one point of view." 3 Lalor, Cyc. Pol. Sc. p. 357. Construing the term "state charitable institution" in the light of the constitutional provisions above mentioned, which require that the Penal Code shall be framed upon the humane principles of reformation and prevention, and as well according to the present-day notions of the purpose of confinement and treatment of prisoners, it is impossible to escape the conclusion that it cannot be confined to an institution which is designed merely for the care of the poor and helpless, or the

11

treatment of those suffering from mere physical infirmities. Its meaning and intent are broader than that, and we are convinced that our penitentiary is reasonably within its purport in the sense in which it is employed.

*Laramie County*, 55 P. at 459-60.

[¶37] Given the context of this decision, it cannot be given the weight Mr. Nicodemus urges. The Court was deciding a tax dispute that concerned the nature and objectives of the penitentiary itself. The Court did not have before it a double homicide like that in this case, and it certainly did not announce a rule that the sole objective of sentencing for violent felonies must be reformation or rehabilitation and the offender's eventual return to society. Moreover, territorial law at the time the constitution was written limited the sentencing options for homicide to either the death penalty or life imprisonment. *See Johnson v. State*, 2003 WY 9, ¶ 37, 61 P.3d 1234, 1249 (Wyo. 2003) (noting life imprisonment for homicide was sentence from territorial laws into statehood and "is a time honored and entirely humane method of punishing that crime"); *Hopkinson v. State*, 664 P.2d 43, 64 (Wyo. 1983) (noting that when Wyoming entered statehood, it carried forward "territorial capital crime of murder," the penalty for which was death penalty or life imprisonment). If it were truly the intent of our constitutional framers to make reformation or rehabilitation the sole objectives of sentencing, effectively barring life imprisonment or the death penalty, we would expect to see a clear statement to that effect in the constitution. Article 1, section 15 provides no such clear statement.

[¶38] Mr. Nicodemus has not met his burden of proving that the 1992 version of Wyo. Stat. Ann. § 6-2-101(b) violates article 1, section 14's protection against cruel or unusual punishment, or the requirements of article 1, section 15.

## CONCLUSION

[¶39] The Eighth Amendment sentencing protections announced in *Miller v. Alabama*, 567 U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) extend only to offenders under the age of eighteen. Because Mr. Nicodemus was eighteen years old when he committed his offenses in 1992, and his sentence does not violate state law, we uphold the district court's denial of Mr. Nicodemus' Rule 35 motion to correct an illegal sentence. Affirmed.