2005 WY 69

Daniel Justin COLEMAN, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 04–45.

Supreme Court of Wyoming.

June 21, 2005.

Representing Appellant: Ken Koski, State Public Defender and Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Johnson, Director, PAP; Jenny L. Craig, Student Director; and Scott M. Dutcher, Student Intern. Argument by Mr. Dutcher.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] Daniel Justin Coleman appeals his conviction of larceny claiming he was improperly denied an attorney at his preliminary hearing. In addition, Mr. Coleman objects to his sentence asserting the district court abused its discretion by ordering him to pay restitution for items he did not admit to stealing and by wrongly banishing him from Natrona County. We affirm Mr. Coleman's conviction because he waived his right to raise defects in his preliminary hearing by not objecting prior to trial. We reverse the district court's order of restitution to the extent it requires payment for items he was not charged with and did not admit to taking during the criminal proceeding. Further, we reverse the district court's order banishing him from Natrona County.

## ISSUES

[¶ 2] Mr. Coleman presents three issues for review:

*Issue I*

Whether reversible error occurred when Mr. Coleman was forced to proceed at the preliminary hearing without an attorney.

*Issue II*

Whether the District Court erred when it ordered restitution for a crime Mr. Coleman was not charged with nor did he admit to committing in court.

*Issue III*

Whether the trial court abused its sentencing discretion when it effectively "sundowned" Mr. Coleman from Natrona County.

The State phrases the issues as follows:

1. Whether any error relating to the absence of counsel during appellant's preliminary hearing was harmless beyond a reasonable doubt.

2. Whether the trial court's order that appellant pay $280.00 in restitution was proper because appellant admitted the criminal acts to which it related.

3. Whether remand is necessary to determine whether appellant may be released into Natrona County.

## FACTS

[¶ 3] On November 16, 2002, Mr. Coleman, a Wal–Mart employee, pushed a cart filled with broken-down boxes toward the front of the store. While Mr. Coleman was pushing the cart, a store manager noticed the boxes looked suspicious. When the store manager asked Mr. Coleman what he was doing with the boxes, he replied that he was taking them to help another manager with an upcoming move. The store manager accepted Mr. Coleman's explanation and proceeded to the front of the store. As Mr. Coleman pushed the cart out the front doors, the anti-theft alarms sounded. The store manager approached Mr. Coleman and found a box in the middle of the cart that was not broken down which contained a digital camera and a video camera. Mr. Coleman was immediately suspended from work and was asked to report back to Wal–Mart on November 18,

2002. Wal–Mart personnel reviewed the security tapes, which showed a man identified as Mr. Coleman taking two items from a cart of electronic equipment and walking out of the camera's view. The tape also showed Mr. Coleman placing the torn down boxes around two items in the bottom of a shopping cart, and pushing it out the door.

[¶ 4] When Mr. Coleman returned to Wal–Mart on November 18, 2002, the district manager of loss prevention for Wal–Mart interviewed him. Mr. Coleman continued to deny knowing anything about the merchandise in the cart, claiming he was only taking the boxes out to help an assistant manager move. After being informed there were videotapes showing him taking the merchandise, Mr. Coleman "went into ... submission," and confessed to taking the items. The district manager asked Mr. Coleman to put his confession in writing, which he did. In his written statement, Mr. Coleman indicated that some gentlemen had approached him to see what he could "get for them" from Wal–Mart in the way of CDs and DVDs, as well as other items. He wrote that they were pressuring him, and on Saturday (November 16, 2002) "the opportunity came to try and get these items," and he was caught stealing them.[1] Mr. Coleman also admitted in the written statement to having previously taken DVDs and CDs.[2] As a result of Mr. Coleman's confession, Casper police were called and he was arrested at the Wal–Mart store.

[¶ 5] The officers escorted Mr. Coleman to the police station where he was read his *Miranda* rights and interviewed by Officer Ready and Detective Kirkendal. Mr. Coleman admitted his involvement in the theft of a digital camera and a video camera from Wal–Mart. Mr. Coleman was then charged with grand larceny in violation of Wyo. Stat. Ann. § 6–3–402 (LexisNexis 2003). At his preliminary hearing before a circuit court judge, Mr. Coleman stated he had filled out the necessary paperwork to receive a court-appointed attorney, but no attorney had been

---

1. Mr. Coleman's statement does not specifically refer to the Panasonic video camera or Sony digital camera.

2. Mr. Coleman estimated in his statement that he had earlier taken about fifteen DVDs and five CDs, which is apparently how Wal–Mart arrived at the $280 of restitution they requested.

provided. The court declared it had not received any paperwork, and asked Mr. Coleman if he wanted to proceed without an attorney, which he agreed to do.

[¶ 6] Mr. Coleman was bound over to district court and, after a three-day trial, a jury found him guilty of felony larceny in violation of § 6–3–402 as charged in the information. During the trial, the only evidence presented by the prosecution to prove the larceny involved the theft of the cameras. The court sentenced Mr. Coleman to a term of not less than fifty-four months nor more than ninety months at the Wyoming State Penitentiary with 240 days credited for time served. Mr. Coleman was also ordered to pay $280.00 in restitution and $100.00 to the crime victim's compensation fund. This appeal followed.

## DISCUSSION

### Preliminary Hearing

[¶ 7] Mr. Coleman argues that he was improperly denied an attorney at his preliminary hearing. In response, the State asserts Mr. Coleman failed to provide this Court with a proper record of the preliminary hearing, waived the right to challenge the procedures followed at the preliminary hearing because he failed to object to the alleged defect before trial, and that any error was harmless.

[¶ 8] As we have recognized before, the preliminary hearing is a critical stage in the criminal proceedings at which a defendant has a constitutional right to the assistance of counsel. *Davila v. State,* 831 P.2d 204, 215–16 (Wyo.1992). However, in *Trujillo v. State,* 880 P.2d 575, 582 (Wyo.1994), we also unequivocally adopted the rule set forth in *Blue v. United States,* 342 F.2d 894, 900–01 (D.C.Cir.1964), that the time to object to defects in the preliminary hearing is before arraignment and trial, and "unless some reason is shown why counsel could not have discovered and challenged the defect before trial, it will generally be assumed that any objections to the preliminary proceedings were considered and waived, and no post-conviction remedies will be available." *Id.* It is only appropriate that a defendant be required to object to alleged errors in the

preliminary hearing procedures before trial when the district court has the opportunity to correct them.

[¶ 9] Finding no objection in the record following Mr. Coleman's preliminary hearing, we are hard pressed to find in his favor on this issue. A thorough review of the record shows it is devoid of any reference, let alone objection, to any defect in Mr. Coleman's preliminary hearing. Though seemingly a harsh result, our prior case law demands this outcome. Thus, we need not discuss the State's other arguments pertaining to the preliminary hearing.

### Restitution

[¶ 10] Mr. Coleman claims the district court erred when it ordered restitution for a crime for which he was not charged and which he did not admit to in the course of the criminal proceedings. The State argues the court's order requiring Mr. Coleman to pay $280.00 in restitution for the DVDs and CDs was proper because he admitted to stealing them in a written statement given to his employer.

[¶ 11] Whether or not the district court had the authority to order the $280.00 restitution payment "is reviewed ... de novo." *Penner v. State,* 2003 WY 143, ¶ 7, 78 P.3d 1045, ¶ 7 (Wyo.2003). In *Penner,* we clarified the distinction between the standard of review of factual challenges to the amount of restitution ordered and challenges to the authority of the court to make a restitution award:

"The distinction between whether a defendant is making a factual challenge to an order of restitution or whether he is challenging the authority of the trial court to make a particular award of restitution is an important one. Challenges to the *factual* basis of an award of restitution can be waived in certain circumstances by the defendant's voluntary actions, such as entering into a plea agreement, and then failing to make any objection at sentencing, as occurred in *Meerscheidt [v. State,* 931 P.2d 220 (Wyo.1997) ]. Outside the context of a plea agreement, the failure to object to a factual determination in the awarding of

restitution results in an appellate review for plain error. In contrast, a challenge by a defendant to the **authority** of a trial court to make a particular award of restitution is reviewed on appeal under a *de novo* statutory interpretation standard whether or not the defendant objected or entered into a plea agreement. While not explicit in our decision in *Meerscheidt,* the reason for conducting a *de novo* review under such circumstances is that a court has only that authority to act which is conferred by the subject statute."

*Id.* (emphasis added) (citations omitted).

[¶ 12]   The Wyoming legislature has created a clear mandate and procedure for the collection of restitution in criminal cases.

As part of sentencing, "the prosecuting attorney shall present to the court any claim for restitution submitted by any victim." Wyo. Stat. Ann. § 7–9–103(a) (LexisNexis 2003). In turn, the court is to "order a defendant to pay restitution to each victim ... unless the court specifically finds that the defendant has no ability to pay...." Wyo. Stat. Ann. § 7–9–102 (LexisNexis 2003). A "victim" is defined as "a person who has suffered pecuniary damage as a result of a defendant's criminal activities." Wyo. Stat. Ann. § 7–9–101(a)(v) (LexisNexis 2003). And finally, "criminal activity" means *"any crime for which there is a plea of guilty, nolo contendere or verdict of guilty upon which a judgment of conviction may be rendered and includes any other crime which is admitted by the defendant, whether or not prosecuted."* Wyo. Stat. Ann. § 7–9–101(a)(i).

*Penner,* ¶ 8 (emphasis added). The crux of the problem at issue is whether Mr. Coleman's admission to his employer is adequate to establish "criminal activity" for purposes of restitution.

[¶ 13]   Mr. Coleman was charged with, and convicted of, felony larceny in violation of § 6–3–402 for stealing a digital camera and a video camera from his employer. No mention was made regarding the alleged theft of DVDs and CDs at any time during the course of the criminal proceedings. In fact, the court granted Mr. Coleman's motion

to redact all references to the DVDs and CDs from his written statement. The prosecutor's comments during consideration of that motion indicated agreement that this evidence related to prior uncharged misconduct. Furthermore, Mr. Coleman never admitted to law enforcement or the court that he stole any DVDs or CDs. The only evidence that Mr. Coleman took DVDs and CDs appears in his written statement taken by Wal–Mart officials.

[¶ 14]   The State urges us to consider the portion of Wyo. Stat. Ann. § 7–9–101(a)(i) (LexisNexis 2003), that states, criminal activity "includes any other crime which is admitted by the defendant, whether or not prosecuted." While this Court has never held that admissions to crimes *must* be given in a court of law for purposes of restitution, we agree with Mr. Coleman that, in accordance with § 7–9–101(a)(i), restitution is only appropriate for crimes for which there is a plea of guilty, nolo contendere, or a guilty verdict, or admissions given in the context of criminal proceedings. We discussed this issue in *Penner* and *Van Riper v. State,* 999 P.2d 646 (Wyo.2000).

[¶ 15]   In *Penner,* pursuant to a plea agreement, the defendant entered a nolo plea to one count of burglary in exchange for dismissal of two other burglary counts. The district court ordered restitution on the counts that were dismissed. On appeal, this Court held that, "[t]he record simply contains no admission of those crimes or express agreement to pay those amounts, and we are not at liberty ... to draw from a blank record inferences that are contrary to the appellant's interest." *Id.,* ¶ 11. While the record in the instant case does contain an admission of sorts in Mr. Coleman's written statement to Wal–Mart authorities, that admission does not rise to the level intended by the statute, which presupposes a defendant and a crime in the context of a criminal proceeding. Rather, Mr. Coleman's statement, made before he was ever charged with any crime, is not sufficient to trigger application of the restitution statute.

[¶ 16]   Similarly, in *Van Riper* we held that restitution could only be ordered for those crimes the defendant pled guilty to or

admitted in the plea agreement. *Van Riper,* 999 P.2d at 648. Mr. Van Riper was charged in one felony information with a single count of escape from official detention. A second felony information charged him with four counts of burglary, three counts of larceny, and one count of property destruction. He later pled guilty to escape and one count of burglarizing an aviation hangar. All other charges were dismissed. He was ordered to pay restitution not only for property taken from the aviation hangar, but also personal property taken from a stolen vehicle, and damage done to stolen vehicles, which were involved in the dismissed charges. Our holding was based in part on the fact that, after the preliminary hearing, the district court dismissed the count charging him with larceny of those items. The facts in *Van Riper* differ slightly from those presented by Mr. Coleman's case in that Mr. Van Riper affirmatively denied taking property from the vehicles. Mr. Coleman was *never* charged with any crime relating to the DVDs and CDs. Additionally, Mr. Coleman's statement was made to Wal–Mart personnel prior to his arrest.

[¶ 17] We hold that the district court was without authority to order Mr. Coleman to pay restitution for stealing DVDs and CDs from Wal–Mart because he did not admit to the crimes in the context of a criminal proceeding. We reverse that portion of Mr. Coleman's sentence.

### Sundowning

[¶ 18] Mr. Coleman also contends the district court abused its discretion in "sundowning" him from Natrona County. The court, in its judgment and sentence, stated, "IT IS FURTHER the recommendation of Court that if the Defendant is ever released on parole or into a less restrictive facility, that he not be granted release to Natrona County."

[¶ 19] In *Strickland v. State,* 2004 WY 91, ¶ 37, 94 P.3d 1034, ¶ 37 (Wyo.2004), we held a defendant may be banished from certain small areas of the state, but such a condition must relate to the rehabilitative purposes of the sentence. In *Strickland,* the district court articulated no rehabilitative purpose

for the banishment condition and thus this Court remanded the case with instructions that the banishment condition either be deleted or the district court justify the condition through "clearly articulated findings." *Id.,* ¶ 38.

[¶ 20] Subsequent to *Strickland, Crabtree v. State,* 2005 WY 62, ¶¶ 15–16, 112 P.3d 618, ¶¶ 15–16 (Wyo.2005), gave us the opportunity to further articulate our position on banishment.

> ... There is case law to suggest that banishment has no rehabilitative role in modern penology and is instead contrary to public policy.
>
> The courts finding that banishment violates public policy often focus on the problems associated with banishing a defendant from an entire state. These courts reason that "[b]anishment would tend to incite dissension, provoke retaliation, and disturb that fundamental equality of political rights among the several states which is the basis of the Union itself. To permit one state to dump its convict criminals into another is not in the interests of safety and welfare; therefore, the punishment by banishment to another state is prohibited by public policy." We find this reasoning equally applicable to banishment from entire counties.

We reiterate that we do not see how banishment from a county has any role in modern penology. Thus, absent extraordinary circumstances, banishment of this sort is never appropriate. *Id.,* ¶ 16. Therefore, this portion of Mr. Coleman's sentence is reversed.

### CONCLUSION

[¶ 21] We hold that Mr. Coleman waived his right to appeal defects in his preliminary hearing by not objecting prior to trial and affirm his conviction. We reverse the order of restitution because it relied only upon a statement to his employer not made in the context of a criminal proceeding. We also reverse that portion of Mr. Coleman's sentence banishing him from Natrona County.