# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 72

### APRIL TERM, A.D. 2024

### July 1, 2024

ANDREW JAMES KELLER,

Appellant
(Defendant),

v.

S-23-0264

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
    *Andrew James Keller, pro se.*

*Representing Appellee:*
    *Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General.*

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]   Andrew James Keller pled guilty to conspiracy to deliver methamphetamine. He filed two appeals related to that conviction, which this Court consolidated and ruled on in *Keller v. State*, 2024 WY 71 (Wyo. 2024) (*Keller I*). While released on bond and awaiting sentencing on the conspiracy charge, Mr. Keller committed additional drug-related offenses. He was arrested, tried, and convicted by a jury and now appeals that conviction. We affirm.

## ISSUES

[¶2]   We consolidate and reframe Mr. Keller's issues as follows:

1. Did Mr. Keller meet his burden of establishing that his counsel was ineffective in advising him to waive his preliminary hearing?

2. Did Mr. Keller waive the defect he claims in the preliminary hearing because he did not raise it before trial?

3. Does res judicata bar Mr. Keller's claim that his public defender's alleged conflict of interest deprived him of effective assistance of counsel?

4. Was Mr. Keller denied his Sixth Amendment rights to confrontation or to compulsory process?

5. Did Mr. Keller waive his challenge to the validity of the search warrant executed on his property?

6. Did the district court properly assist Mr. Keller with his claims of inadequate access to legal resources and materials to prepare for trial and present evidence in his defense?

7. Did the prosecutor commit misconduct?

## FACTS

[¶3]   In September of 2022, Mr. Keller posted bond after pleading guilty to one count of conspiracy to deliver methamphetamine and was released pending sentencing. During his release, the Wyoming Department of Criminal Investigations (DCI) received information

1

that he was selling methamphetamine out of his auto shop, and it obtained a warrant to search the shop. On December 30, 2022, DCI arrested Mr. Keller and executed the search warrant. Agents found over $4,500 in cash on him, and in the shop, they found 422 grams of methamphetamine in large and small shards, and drug paraphernalia, such as one-by-one baggies and digital scales. The State charged Mr. Keller with conspiracy to deliver methamphetamine and possession of methamphetamine with intent to deliver.[1]

[¶4]    Later that day, DCI agents advised Mr. Keller of his Miranda rights and interviewed him. In the recorded interview, Mr. Keller admitted some of the cash found on his person was from methamphetamine sales and provided the name and number of his supplier, as well as the names of some of his customers.

[¶5]    At his initial appearance on January 4, 2023, the circuit court asked Mr. Keller:

> Judge: Do you wish to have a Public Defender appointed to represent you?

> [Mr. Keller]: No.

> Judge: You'll be hiring your own attorney?

> [Mr. Keller]: Yeah[.]

> . . .

> Judge: Not working and, I'll go ahead and appoint the Public Defender's Office to represent you in this matter.

> [Mr. Keller]: I said I didn't want the Public Defender's Office reviewing anything pertinent to this case.

---

[1] The State also charged Mr. Keller with one count of delivery of methamphetamine but later dismissed that count.

> Judge: Well they'll be appointed because you're not employed and you don't have funds to hire an attorney and you need an attorney at your preliminary hearing. So they will be appointed at this point. You can hire your own attorney if you are able to do that and remove them from the case, okay?

> [Mr. Keller]: For the record, I don't want the Public Defender's Office reviewing anything pertinent to this case.

> Judge: Yep, I understand that, but you are being appointed a Public Defender.

The circuit court entered an order appointing the State Public Defender's Office to represent Mr. Keller. Mr. Keller did not submit an affidavit of indigency; he signed the affidavit of defendant on the court's order with an "X" and "R.T.S."[2]

[¶6]    Damon DeBernardi, a contract attorney with the Public Defender's Office, filed his entry of appearance on behalf of Mr. Keller. At the time, Mr. DeBernardi was also Mr. Keller's counsel of record for his prior conspiracy charge. Mr. DeBernardi filed a Waiver of Preliminary Hearing, which he and Mr. Keller had signed, and which specified that Mr. Keller was represented by Mr. DeBernardi. The circuit court entered an order finding that Mr. Keller was represented by Mr. DeBernardi and that he had waived his preliminary hearing. The case was bound over to the district court.

[¶7]    On March 1, 2023, the district court arraigned Mr. Keller on the new drug charges. Mr. Keller was present, represented by Mr. DeBernardi, and pled not guilty to each charge. Mr. DeBernardi informed the court his contract with the Public Defender's Office had ended and that there would be a substitution of counsel. The court later granted Mr. DeBernardi's Motion to Withdraw and appointed Marty Scott, Senior Assistant Public Defender, to represent Mr. Keller.

[¶8]    After Mr. Scott's appointment, Mr. Keller filed a change of representation motion, and Mr. Scott filed a motion to withdraw as counsel. At the hearing on the motions, Mr. Keller asserted that the Public Defender's Office was "representing informants," that there was "no way that they [could] properly represent [his] interests," and that "the

---

[2]Mr. Keller's attorney later brought this to the trial court's attention, suggesting Mr. Keller meant to indicate he had "refused to sign."

whole Public Defender's Office [was] conflicted." Mr. Scott responded that he did not believe there was any conflict of interest but noted that the circuit court appointed the Public Defender's Office over Mr. Keller's objection. Mr. Scott also explained the process of conflict checks for the Public Defender's Office. Mr. Cole, an assistant public defender, added that the Public Defender's Office had contacted the District Attorney's Office to ensure the confidential informants in this case did not cause Mr. Scott to have a conflict of interest in his representation of Mr. Keller. The district court ruled that there was not "a sufficient basis" to substitute a different public defender because the court did not "see a sufficient, ethical issue that's been specifically identified that would require [the court] to do that."

[¶9]    When Mr. Keller requested to proceed pro se the court held a *Faretta* hearing.[3] The court cautioned Mr. Keller on the challenges of proceeding pro se, including that he may not have the specialized training and experience that a lawyer would in defending criminal cases; he may not know all of the "rules that come into play in the legal process;" he may not have the training lawyers receive in the "examination of witnesses" which "[could] be critical to [his] defense;" and he "may be unaware of the changes in the law. . . particularly where [he was] incarcerated at this time." Mr. Keller said he understood these warnings. He confirmed three times that he wanted to represent himself, and the court found that Mr. Keller knowingly and voluntarily waived his right to counsel and that he could proceed pro se.

[¶10]    Mr. Keller's trial was originally set for May 30, 2023, which would have been approximately two weeks after he had elected to proceed pro se. But the court set a status conference to allow Mr. Keller time to view discovery and for the parties to discuss whether Mr. Keller would need additional time to prepare for trial. At that status conference, Mr. Keller expressed concerns with certain aspects of trial preparation due to his incarceration. He had not been able to view the discovery that had been provided to him on a hard drive, and he had not received mail and materials related to his case. The court confirmed that Mr. Keller still wanted to proceed with a jury trial now that he was representing himself and offered to contact the jail about Mr. Keller's need to view the discovery. The court also found good cause to vacate Mr. Keller's original trial date and set it for later.

---

[3] A trial court holds a *Faretta* hearing to ensure a defendant is "intentionally, knowingly, and voluntarily waiving his right to counsel, and to advise him 'of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" *Vlahos v. State*, 2022 WY 129, ¶ 24 n.3, 518 P.3d 1057, 1065, n.3 (Wyo. 2022) (quoting *Reifer v. State*, 2014 WY 139, ¶¶ 15-16, 336 P.3d 1214, 1217 (Wyo. 2014)); *see also Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

4

[¶11]   The court held another status conference, where the court confirmed that Mr. Keller had been able to view the discovery. However, at that status conference, Mr. Keller complained the jail law library only gave him access to "case law and references to defenses that weren't effective in overturning the decision." He also complained he was not able to gather information for his defense or speak with his witnesses because "everything in that jail is monitored and recorded." At the end of that conference, the court asked Mr. Keller if he would be ready for trial, and Mr. Keller responded: "I mean, I guess I'll be as ready as I can be. So, yeah. We'll go, I guess."

[¶12]   Mr. Keller filed a motion to suppress the statements he made during his post-arrest interview with DCI, arguing that his statements were coerced. After a hearing on the motion, the court denied it, finding by a preponderance of the evidence that Mr. Keller's statements were given voluntarily. Mr. Keller did not raise an issue related to the search warrant executed on his property in either his motion to suppress or the hearing on the motion.

[¶13]   Before trial, the State filed a Notice Regarding Potential Fifth Amendment Issues of Potential Witnesses. The State indicated that Mr. Keller's witnesses, including Tristany Laramendy, were all believed or suspected of having bought methamphetamine from Mr. Keller. The State asserted:

> These potential witnesses may need to have certain rights afforded to them prior to testifying. The State believes that the advisement of any person who may make potentially incriminating statements, under oath, in open court should be afforded the opportunity to seek counsel regarding their rights to testify. The State believed that these advisements should be done in advance of testimony and outside the presence of the jury.

The court deferred ruling on the matter until trial.

[¶14]   On the first morning of trial, Mr. Keller informed the district court that he had requested laptop access from the jail but had not heard back. The court provided him with a laptop. Mr. Keller also raised an issue with printing exhibits, and the court helped him print the necessary materials.

[¶15]   The court held a four-day trial. The State called three witnesses, and Mr. Keller opted to cross-examine two of them. After the State rested, Mr. Keller stated he intended to call Ms. Laramendy. The State suggested that the court discuss Ms. Laramendy's Fifth Amendment interest with her because the State had evidence she had obtained a pound of methamphetamine from Mr. Keller's shop. Mr. Keller claimed the State was threatening

5

his witness and refused to call her to the stand. Mr. Keller then called other witnesses to challenge the validity of the search warrant executed on his shop.

[¶16] The jury returned a verdict of guilty on both counts. At sentencing, Mr. Keller told the court that one of the witnesses he had subpoenaed for trial had been held in a conference room during the trial and he had not been alerted of her presence. He did not identify the witness. The court sentenced Mr. Keller to seven and a half to ten years on each count, to be served concurrently to each other but consecutive to the sentence in *Keller I*. The court awarded Mr. Keller credit for time served on each count. Mr. Keller timely appealed.

## *DISCUSSION*

### I.      *Mr. Keller failed to meet his burden of establishing that his counsel was ineffective in advising him to waive his preliminary hearing.*

[¶17] "Ineffective assistance of counsel claims 'involve mixed questions of law and fact.'" *Bindner v. State*, 2024 WY 53, ¶ 24, 548 P.3d 285 (Wyo. 2024) (quoting *Jendresen v. State*, 2021 WY 82, ¶ 36, 491 P.3d 273, 284 (Wyo. 2021)). "We review the district court's findings of fact for clear error and its conclusions of law de novo." *Id.* "We have adopted the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), to determine whether a defendant has received effective assistance of counsel." *Galbreath v. State*, 2015 WY 49, ¶ 5, 346 P.3d 16, 18 (Wyo. 2015) (citing *Frias v. State*, 722 P.2d 135, 145 (Wyo. 1986)). "To succeed on a claim of ineffectiveness, a defendant 'must show both that counsel's performance was deficient, and he was prejudiced as a result.'" *Bindner*, 2024 WY 53, ¶ 25 548 P.3d at 285 (quoting *Buckingham v. State*, 2022 WY 99, ¶ 25, 515 P.3d 615, 619 (Wyo. 2022)). "We 'invoke[ ] a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. [T]he paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance.'" *Mills v. State*, 2023 WY 76, ¶ 18, 533 P.3d 182, 189 (Wyo. 2023) (quoting *Winters v. State*, 2019 WY 76, ¶ 12, 446 P.3d 191, 199 (Wyo. 2019)). "The burden of proving that counsel was ineffective rests entirely on the appellant." *Galbreath*, 2015 WY 49, ¶ 5, 346 P.3d at 18 (quoting *Pendleton v. State*, 2008 WY 36, ¶ 20, 180 P.3d 212, 219 (Wyo. 2008)).

[¶18] Mr. Keller focused his ineffective assistance of counsel claim on the waiver of his preliminary hearing. He does not explain how Mr. DeBernardi acted deficiently and instead does no more than make a broad claim that waiving the preliminary hearing "does not constitute adversarial testing" because it is equivalent to a concession of guilt by counsel. Given the differences in the burden of proof at the preliminary hearing and a trial on the charges, a waiver of a preliminary hearing is by no means the equivalent of a concession of guilt. *Compare Ortiz v. State*, 2014 WY 60, 326 P.3d 883 (Wyo. 2014)

6

("Determining probable cause is the purpose of the preliminary hearing.") (citing *Madrid v. State*, 910 P.2d 1340, 1343 (Wyo. 1996)) *with Kessel v. State*, 2023 WY 120, ¶ 16, 539 P.3d 406, 409 (Wyo. 2023) (At trial, "[i]t is established law in this Court and the United States Supreme Court that the State is required to prove every element of a criminal offense beyond a reasonable doubt[.]"). Additionally, Mr. Keller presents no argument on how he was prejudiced by the waiver of his preliminary hearing. Because Mr. Keller showed neither a deficiency in counsel's performance nor prejudice from the waiver, he has not met his burden of proving he was denied his right to effective assistance of counsel. [4]

## II. Mr. Keller waived the defect he claims in the preliminary hearing because he did not raise it before trial.

[¶19]  Mr. Keller claims the waiver of his preliminary hearing was invalid because it was entered by an attorney that was forced on him. The State argues Mr. Keller waived any challenge to his preliminary hearing because he did not argue his waiver was invalid to the trial court below and has offered no explanation as to why the defect could not have been discovered and challenged before trial. We agree.

[¶20]  "While the question of waiver is often one of fact, when the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law which we consider de novo." *Benedict v. State*, 2024 WY 55, ¶ 12, 548 P.3d 989 (Wyo. 2024) (quoting *Barney v. State*, 2022 WY 49, ¶ 21, 507 P.3d 459, 463 (Wyo. 2022)). "Because the record is clear in this case, and the facts relating to waiver are not disputed, we address the question of waiver as one of law." *Benedict*, 2024 WY 55, ¶ 12, 548 P.3d at 989.

[¶21]  "In all cases required to be tried in the district court, except upon indictment, the defendant shall be entitled to a preliminary examination in the circuit court." W.R.Cr.P. 5.1.(a). The purpose of a preliminary hearing "is for the circuit court to determine whether there is 'probable cause to believe that the charged offense or lesser included offense has been committed and that the defendant committed it[.]'" *State v. John*, 2020 WY 46, ¶ 29, 460 P.3d 1122, 1132 (Wyo. 2020) (quoting W.R.Cr.P. 5.1(b); *Madrid*, 910 P.2d at 1343). "The defendant may waive preliminary examination but the waiver must be written or on the record. If the preliminary examination is waived, the case shall be transferred to district court for further proceedings." W.R.Cr.P. 5.1; 22 C.J.S. Criminal

---

[4] Mr. Keller also asserts that "[n]o investigation of any type was conducted by any 'lawyer.'" Although Mr. Keller "is entitled to 'a certain leniency' from the more stringent standards accorded formal pleading drafted by lawyers[,]" Mr. Keller fired the Public Defender's Office early on, and he does not present cogent argument or citation to legal authority as to how Mr. DeBernardi or Mr. Scott failed to investigate. *Wright v. State*, 2023 WY 122, n.1, 540 P.3d 227, n.1 (Wyo. 2023) (quoting *Osborn v. Emporium Videos*, 848 P.2d 237, 240 (Wyo. 1993)). We therefore will not consider this argument.

Procedure and Rights of Accused § 25 ("A preliminary hearing in a criminal case is primarily for the accused's benefit and is in the nature of a personal right or privilege which may be waived.").

[¶22]  Although we have said "[t]o force an attorney on a defendant who has asserted his right to represent himself constitutes reversible error," *Van Riper v. State*, 882 P.2d 230, 235 (Wyo. 1994) (citing *Ash v. State*, 555 P.2d 221, 224 (Wyo. 1976), cert. denied, 434 U.S. 842, 98 S.Ct. 139, 54 L.Ed.2d 106 (1977)), "[t]he accused may waive defects or irregularities in the conduct of the preliminary hearing if the accused does not raise objection thereto in the proper time and manner." 22 C.J.S. Criminal Procedure and Rights of Accused § 31. This Court has

> unequivocally adopted the rule set forth in *Blue v. United States*, 342 F.2d 894, 900–01 (D.C.Cir.1964), that the time to object to defects in the preliminary hearing is before arraignment and trial, and "unless some reason is shown why counsel could not have discovered and challenged the defect before trial, it will generally be assumed that any objections to the preliminary proceedings were considered and waived, and no post-conviction remedies will be available."

*Coleman v. State*, 2005 WY 69, ¶ 8, 115 P.3d 411, 413 (Wyo. 2005) (quoting *Blue v. United States*, 342 F.2d 894, 900-01 (D.C. Cir. 1964)) (rejecting consideration of defects first presented on appeal because "it would provide no incentive to defendants to seek pre-trial resolution and cure of claims of defects in pre-trial proceedings"). "[I]t is only appropriate that a defendant be required to object to alleged errors in the preliminary hearing procedures before trial when the district court has the opportunity to correct them." *Janssen v. State*, 2005 WY 123, ¶ 25, 120 P.3d 1006, 1012 (Wyo. 2005) (citing *Coleman*, 2005 WY 69, ¶ 8, 115 P.3d at 413). "Failure to do so bars review." *Id.*

[¶23]  While Mr. Keller did object to having appointed counsel at his initial hearing, he had until trial to raise an objection to his preliminary hearing waiver and did not. It is clear from the record that Mr. Keller's preliminary hearing waiver was signed by Mr. DeBernardi as Mr. Keller's counsel and by Mr. Keller himself. The record contains no indication Mr. Keller did not want to waive the preliminary hearing, and Mr. Keller has offered no explanation as to why he could not have challenged the waiver of the preliminary hearing before trial. As such, no post-conviction remedies are available. *Coleman*, 2005 WY 69, ¶ 8, 115 P.3d at 413 (quoting *Blue*, 342 F.2d 894, 900-01).

***III.*** ***Mr. Keller's claim that he was denied effective assistance of counsel because his public defender allegedly had a conflict of interest is identical to the claim resolved in Keller I and is therefore barred by res judicata.***

[¶24]  Mr. Keller asserts that the trial court failed to recognize that his second appointed public defender, Mr. Scott, had a conflict of interest, and this failure prevented "him from having the competent representation he needed." Because this issue was previously decided in *Keller I*, 2024 WY 71, Mr. Keller's claim is barred by res judicata.

[¶25]  "Whether [Mr. Keller's] claims are barred by the doctrine of res judicata is a question of law that this Court reviews de novo." *Goetzel v. State*, 2019 WY 27, ¶ 9, 435 P.3d 865, 868 (Wyo. 2019) (citing *Nicodemus v. State*, 2017 WY 34, ¶ 9, 392 P.3d 408, 411 (Wyo. 2017); *Poignee v. State*, 2016 WY 42, ¶ 12, 369 P.3d 516, 518 (Wyo. 2016); *Bird v. State*, 2015 WY 108, ¶ 9, 356 P.3d 264, 267 (Wyo. 2015)). "Res judicata bars litigation of issues that were or could have been determined in a prior proceeding." *Goetzel*, 2019 WY 27, ¶ 11, 435 P.3d at 868 (citing *Nicodemus*, 2017 WY 34, ¶ 11, 392 P.3d at 411) (italics removed). It "precludes relitigation of an issue when four factors are met: '(1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them.'" *Tucker v. State*, 2023 WY 106, ¶ 7, 537 P.3d 767, 769 (Wyo. 2023) (quoting *Majhanovich v. State*, 2021 WY 135, ¶ 8, 499 P.3d 995, 997 (Wyo. 2021)).

[¶26]  In *Keller I*, 2024 WY 71, Mr. Keller filed a motion to withdraw his guilty plea and for a new trial under W.R.A.P. 21, claiming that he received ineffective assistance of counsel. Mr. Scott represented him in that case as well, and he argued that Mr. Scott had a conflict of interest because Mr. Scott was employed by the Public Defender's Office, which had other attorneys representing co-defendants and/or informants involved in Mr. Keller's case. This Court affirmed the district court's denial of his Rule 21 motion, concluding that Mr. Keller had failed to make the required showing to support his claim. *Keller I*, 2024 WY 71. Mr. Keller made the identical claim in this case with no new or separate allegations and with no further or new evidence of a conflict. The claim was resolved in *Keller I*, and res judicata therefore bars our consideration of it in this case.

***IV.*** ***Mr. Keller was not denied his Sixth Amendment rights to confrontation or to compulsory process.***

**A.** **Mr. Keller was not denied his Sixth Amendment Confrontation Clause rights.**

[¶27]  Mr. Keller next takes issue with the State failing to call three witnesses: Kenneth Holland, Thomas Pederson, and Cole Herrick. He claims that during law enforcement's investigation of him, these three witnesses made accusations against him, so the State's

9

failure to call these witnesses violated his right to confront his accusers under the Sixth Amendment to the United States Constitution.[5] The State contends Mr. Keller's argument misconstrues the rights the Confrontation Clause protects. We agree and find no violation of Mr. Keller's right to confront his accusers.

[¶28]  Mr. Keller's Confrontation Clause argument is a question of law that we review de novo. *Tamblyn v. State*, 2020 WY 76, ¶ 13, 465 P.3d 440, 445 (Wyo. 2020) (citing *Schmidt v. State*, 2017 WY 101, ¶ 22, 401 P.3d 868, 878 (Wyo. 2017)). The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The primary right secured by the Confrontation Clause . . . is the right of cross-examination." *Tamblyn*, 2020 WY 76, ¶ 47, 465 P.3d at 452 (quoting *Sparks v. State*, 2019 WY 50, ¶ 41, 440 P.3d 1095, 1108 (Wyo. 2019)); *Pennsylvania v. Ritchie*, 480 U.S. 39, 53, 107 S. Ct. 989, 999, 94 L. Ed. 2d 40 (1987) ("Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses.") (citing *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)).

[¶29]  Before trial, the State informed Mr. Keller it did not intend to call Mr. Herrick or Mr. Pederson. Nothing prevented Mr. Keller from designating and calling these individuals and Mr. Holland as witnesses. "If a defendant wishes to have a particular witness testify, he must call that witness." *Allbritten v. State*, 317 N.E.2d 854, 855 (Ind. 1974) (citing *Kerlin v. State*, 265 N.E.2d 22 (Ind. 1970)). As to the witnesses the State did call, Mr. Keller was given the opportunity to cross-examine each and exercised that right as he chose. Because Mr. Keller had the opportunity to confront the witnesses against him, his Confrontation Clause rights under the Sixth Amendment were not violated. *Haselhuhn v. State*, 727 P.2d 280, 286 (Wyo. 1986) ("The right of confrontation which is inherent to any fair trial involves cross-examination with respect to testimony that a witness has given. It does not, however, extend to a right to cross-examine a witness who is not called to testify."); *Rodriguez v. State*, 2010 WY 170, ¶ 10, 245 P.3d 818, 822 (Wyo. 2010) ("Because RH was available as a witness, and Mr. Rodriguez had an opportunity to confront her, he was not denied his constitutional right to confront the witness."); *State v. Bailey*, 573 P.2d 590, 594 (Kan. 1977) ("We hold the failure of the

---

[5] Mr. Keller "references the Wyoming Constitution only in passing on appeal." *Matter of U.S. Currency Totaling $470,040.00*, 2020 WY 30, n.2, 459 P.3d 430, 432, n.2 (Wyo. 2020). "It is usually essential to raise state constitutional claims in the lower court to warrant our review on appeal." *Id.*, 2020 WY 30, 459 P.3d 430, 432 (Wyo. 2020) (quoting *Sheesley v. State*, 2019 WY 32, ¶ 16 n.6, 437 P.3d 830, 838, n.6 (Wyo. 2019)). Because Mr. Keller did not assert a confrontation clause argument under Article I, section 10 of the Wyoming Constitution below, we will not consider it on appeal. *See also Joseph v. State*, 2023 WY 58, ¶ 19, 530 P.3d 1071, 1076 (Wyo. 2023) ("[L]itigants must provide proper argument and briefing using a precise and analytically sound approach before we will consider a state constitutional claim.") (quoting *Sheesley*, 2019 WY 32, ¶ 15, 437 P.3d at 837).

state to call a particular person to give evidence is not a ground for reversal of conviction when the accused had the opportunity to confront all persons who were witnesses against him at his trial.").

**B.    Mr. Keller was not denied his Sixth Amendment Compulsory Process Clause rights.**

[¶30]  Mr. Keller also alleges a violation of the Compulsory Process Clause of the Sixth Amendment. The Sixth Amendment's Compulsory Process Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. A violation of the Compulsory Process Clause occurs when a defendant is arbitrarily deprived of testimony that would have been relevant, material, and vital to his defense. *Gruwell v. State*, 2011 WY 67, ¶ 13, 254 P.3d 223, 227 (Wyo. 2011) (quoting *Dysthe v. State*, 2003 WY 20, ¶ 5, 63 P.3d 875, 879 (Wyo. 2003)). Mr. Keller claims his compulsory process rights were violated because the State prevented Ms. Laramendy from testifying, the court was not notified of a defense witness who had arrived at trial, and the sheriff's office was unable to serve a witness because she no longer resided at the subpoena's listed address.

[¶31]  "[T]he right to compel the presence and present the testimony of witnesses provides the defendant with a sword that may be employed to rebut the prosecution's case . . . The very nature of the right requires that its effective use be preceded by deliberate planning and affirmative conduct." *Gruwell*, 2011 WY 67, ¶ 14, 254 P.3d at 227-28 (quoting *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653-54, 98 L.Ed.2d 798 (1988)). It was Mr. Keller's responsibility to ensure he effectively presented his case, which required "deliberate planning and affirmative conduct" on his part to have the necessary organization and information relating to his desired witnesses. *Id.*

[¶32]  Mr. Keller has not shown that he was "arbitrarily deprived of testimony that would have been relevant, material, and vital to his defense." *Gruwell*, 2011 WY 67, ¶ 13, 254 P.3d at 227 (quoting *Dysthe*, 2003 WY 20, ¶ 5, 63 P.3d at 879). It was his responsibility to locate and coordinate the presence of his witnesses, and he has not shown that the district court interfered with his ability to do so. We therefore find no violation of Mr. Keller's Sixth Amendment right as to these witnesses.

[¶33]  As to the testimony of Ms. Laramendy, the record shows that the State raised a concern regarding evidence she had obtained methamphetamine from Mr. Keller, and the State suggested the district court advise her of her right to remain silent.

The Court: For what purpose are you referring this?

Mr. Itzen: I think it goes to Ms. Larramendy's (sic) credibility, You Honor. Clearly at a minimum, places her in jeopardy. If she wants to waive her Fifth Amendment interest, that's entirely up to her.

The Court: Mr. Keller?

[Mr. Keller]: I think that they are trying to intimidate Ms. Larramendy (sic). I think that it coincides with exactly what I've been saying about them coercing statements, manipulating evidence.

. . .

The Court: So what are you proposing that I do, Mr. Itzen?

Mr. Itzen: Just advise her that she has the right to remain silent if she chooses to do that, and we can leave it at that.

[Mr. Keller]: If they're going to play this game, I don't want to put Ms. Larramendy (sic) on the stand. I'll take her off the witness list. She doesn't need to testify.

The Court: Are you sure?

[Mr. Keller]: Absolutely. This is a threat.

The Court: Once I release her, we can't go back on it.

12

[Mr. Keller]: You shouldn't allow them to threaten Ms. Larramendy (sic) like this, but I'll take her off the stand, that's fine. I'll take her off.

The Court: All right.

Mr. Keller did not call Ms. Laramendy to the stand, and the court released her from her subpoena.

[¶34]  "The United States Supreme Court has described the Fifth Amendment right to remain silent as follows: The Self-Incrimination Clause of the Fifth Amendment provides that no 'person ... shall be compelled in any criminal case to be a witness against himself.'" *Herrera v. State*, 2019 WY 93, ¶ 26, 448 P.3d 844, 851 (Wyo. 2019) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 588-89, 110 S.Ct. 2638, 2643, 110 L.Ed.2d 528 (1990)). "The privilege protects a mere witness as fully as it does one who is also a party defendant." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 322, 38 L. Ed. 2d 274 (1973) (quoting *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924)); 98 C.J.S. Witnesses § 593.

> "[T]he function of the court in a criminal trial is to conduct a fair and impartial proceeding....When the rights of those other than the parties are implicated, [t]he trial judge has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice....Accordingly, it is within the court's discretion to warn a witness about the possibility of incriminating himself....

*State v. Collymore*, 334 Conn. 431, 470-71, 223 A.3d 1, 25-26 (2020); 98 C.J.S. Witnesses § 605 ("As a general matter, the trial court may in its discretion, but is not required to, warn a witness other than a defendant in a criminal proceeding with respect to the privilege against self-incrimination."). Additionally, "the trial court has discretion to allow or disallow the defendant to call a witness to the stand who the court knows will invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury." *Porth v. State*, 868 P.2d 236, 240 (Wyo. 1994).

13

[¶35]   In this case, Mr. Keller did not give the district court the opportunity to exercise its discretion and instead withdrew Ms. Laramendy as a witness. Because the court took no action to interfere with Mr. Keller's ability to call his witness, he can assert no violation of his Sixth Amendment right to compulsory process.

## V.   *Mr. Keller waived his challenge to the validity of the search warrant executed on his property*.

[¶36]   Mr. Keller argues the search warrant law enforcement executed on his property was fraudulent and thereby rendered "all evidence found during and after the search [f]ruit of the poisonous tree." He simultaneously claims the warrant did not exist, was not filed, was not signed by a judge, and was invalid. The State argues Mr. Keller has waived this claim because he failed to raise it in a pretrial motion to suppress. We agree.

[¶37]   "While the question of waiver is often one of fact, when the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law which we consider de novo." *Rodriguez v. State*, 2019 WY 25, ¶ 16, 435 P.3d 399, 403 (Wyo. 2019) (quoting *Verheydt v. Verheydt*, 2013 WY 25, ¶ 21, 295 P.3d 1245, 1250 (Wyo. 2013)) (italics removed). "Because the record is clear and the facts relating to waiver are not disputed, our review is de novo." *Rodriguez*, 2019 WY 25, ¶ 16, 435 P.3d at 403.

> W.R.Cr.P. 12(b)(3) requires that a motion to suppress be made before trial, and if a pretrial motion is not made, appellate review is precluded. The only exception to this bar is a showing of good cause for the failure to file the required pretrial motion. If 'the record reveals no impediment to the defendant's ability to have raised the issue prior to appeal,' good cause for failing to raise the issue in a timely manner cannot be found.

*Herrera*, 2019 WY 93, ¶ 18, 448 P.3d at 849 (quoting *Bittleston v. State*, 2019 WY 64, ¶ 36, 442 P.3d 1287, 1296 (Wyo. 2019)) (cleaned up). Additionally, when a defendant files a pretrial motion to suppress "but the motion fails to assert an argument the defendant later raises for the first time on appeal, absent a showing of good cause, W.R.Cr.P. 12(g) bars appellate review of any evidence suppression arguments that could have been raised pre-trial but were not." *Mathewson v. State*, 2019 WY 36, ¶ 41, 438 P.3d 189, 205 (Wyo. 2019) (citing *Rodriguez*, 2019 WY 25, ¶ 37, 435 P.3d at 410; *United States v. Burke*, 633 F.3d 984, 988 (10th Cir. 2011)).

[¶38]   Mr. Keller filed a pretrial motion to suppress, and the court held a hearing on the motion. Mr. Keller asserted no claims related to the search warrant in either the motion or the hearing. Because Mr. Keller has not shown or even asserted good cause for his failure

to file a pretrial motion challenging the search warrant, he has waived any claim concerning the warrant's validity, and appellate review is barred.

### VI. *The district court did not abuse its discretion in assisting Mr. Keller with his claims of inadequate access to legal resources and materials to prepare for trial and present evidence in his defense.*

[¶39] Mr. Keller claims that difficulties he encountered in representing himself while incarcerated "create[d] a fundamentally unfair circumstance that would render the results of the trial untrustworthy" and that he was "[d]enied resources to prepare for trial" and was "effectively denied the ability to gather evidence to present in his defense." He asserts deficiencies with the jail law library as well as an inability to print needed information and receive necessary mail and materials, and he claims the district court's response to these difficulties was inadequate. We review this claim for an abuse of discretion. *See May v. State*, 2003 WY 14, ¶ 45, 62 P.3d 574, 586 (Wyo. 2003).

[¶40] "It is the district court's responsibility to inquire into the defendant's understanding of the charges against him, the allowable punishments, possible defenses, and the risks of proceeding pro se." *Large v. State*, 2011 WY 159, ¶ 32, 265 P.3d 243, 251 (Wyo. 2011) (quoting *Vargas v. State*, 963 P.2d 984, 989-90 (Wyo. 1998)). "When a defendant makes a decision to manage his own case, he relinquishes many of the traditional benefits associated with his right to counsel." *May*, 2003 WY 14, ¶ 46, 62 P.3d at 586 (citing *Jennings v. State*, 4 P.3d 915, 919 (Wyo. 2000)). "The right to self representation, unlike other constitutional guarantees, has as its primary purpose the defendant's freedom of choice, even though such a choice may operate to his detriment." *Scott v. State*, 2012 WY 86, ¶ 10, 278 P.3d 747, 750 (Wyo. 2012) (citing *Burdine v. State*, 974 P.2d 927, 931 (Wyo. 1999)); *see also Jenkins v. State*, 492 N.E.2d 666, 668 (Ind. 1986) ("A defendant who chooses to proceed pro se must accept the burdens and hazards incidental to his position.") (citing *Yager v. State*, 437 N.E.2d 454 (Ind. 1982)). The district court properly warned Mr. Keller of the risks of proceeding pro se, including the risks that he may not have the specialized training and experience that a lawyer would have in defending criminal cases and that he "may be unaware of the changes in the law. . . particularly where [he was] incarcerated at this time." Mr. Keller acknowledged the risks and confirmed three times that he wanted to proceed pro se.

[¶41] The district court assisted Mr. Keller throughout his case. In pretrial proceedings, the court offered to contact the jail and vacated Mr. Keller's original trial date due to the challenges Mr. Keller faced with viewing discovery. The court also confirmed that Mr. Keller still wished to proceed to trial now that he was representing himself. It later confirmed Mr. Keller had been able to view discovery and that he would be ready for his trial date. At trial, the court provided Mr. Keller with a laptop and helped him print his materials. We find no error in the court's response to the difficulties Mr. Keller encountered in proceeding pro se.

## VII. *The prosecutor did not commit misconduct.*

[¶42] Mr. Keller argues the prosecutor committed misconduct for various reasons related to the claims we have addressed above. For instance, he contends the prosecutor committed misconduct because he prosecuted without a valid search warrant. He also asserts misconduct relating to his Sixth Amendment rights, arguing that the prosecutor committed misconduct because he "threatened" Ms. Laramendy and did not notify the court of a defense witness who had arrived at trial.

[¶43] "Prosecutorial misconduct occurs when a prosecutor illegally or improperly attempts to persuade a jury 'to wrongly convict a defendant or assess an unjustified punishment.[']" *Berry v. State*, 2023 WY 75, ¶ 35, 533 P.3d 474, 485 (Wyo. 2023) (quoting *Armajo v. State*, 2020 WY 153, ¶ 32, 478 P.3d 184, 193 (Wyo. 2020)). "[Mr. Keller] 'bears the burden of establishing prosecutorial misconduct.'" *Anderson v. State*, 2022 WY 119, ¶ 35, 517 P.3d 583, 593 (Wyo. 2022) (quoting *Mendoza v. State*, 2021 WY 127, ¶ 12, 498 P.3d 82, 85 (Wyo. 2021)). Because Mr. Keller objected to the alleged errors below, we review his challenges "for harmless error 'after first determining if error occurred.'" *Berry*, 2023 WY 75, ¶ 36, 533 P.3d at 485 (quoting *Armajo*, 2020 WY 153, ¶ 33, 478 P.3d at 193).

[¶44] Mr. Keller's claims are not allegations of prosecutorial misconduct and are instead simply a repackaging of the claims we resolved above. Because Mr. Keller has not shown, or even asserted, the prosecutor illegally or improperly attempted to persuade the jury to wrongly convict him, or assess an unjustified punishment, he has failed to prove prosecutorial misconduct. *Berry*, 2023 WY 75, ¶ 35, 533 P.3d at 485.

[¶45] Affirmed.